# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GBG RANCH, LTD** | § | **CASE NO. 14-50155** |
| | § | |
| Debtors. | § | (Chapter 11) |

### DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL ESTATE FREE AND CLEAR OF LIENS UNDER 11 U.S.C. § 363(f)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE DAVID JONES, UNITED STATES BANKRUPTCY JUDGE:

GBG RANCH, LTD. ("Debtor"), files this Motion to Sell Real Estate Free and Clear of Liens, Claims and Encumbrances pursuant to 11 U.S.C. § 363(f):

1.    Debtor filed its petition initiating this bankruptcy case on July 8, 2014. Since the filing date, Debtor has been operating as a debtor-in-possession pursuant to 11 U.S.C. § 1107 and 1108.  As of the date of filing, Debtor owned approximately 20,000 acres of surface estate in Webb County identified as the Hill Ranch, the Corazon Ranch and the Oilton Ranch. The Hill Ranch is situated at the intersection of Interstate

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                         Page **1** of **8**

35 and the Camino Colombia Toll way in Webb County, Texas. The Hill Ranch has been surveyed into 9 discreet tracts including: Tract 1, Tract 2, Tract 8 and Tract 9 out of the Hill Ranch consisting of 1,344.44 acres, more or less, located in Webb County, Texas, (the "Property").

2.      By this Motion, Debtor seeks to sell the Property to Rancho Loma Linda, or assigns ("Loma Linda") free and clear of liens, claims and encumbrances pursuant to a Sale and Purchase Contract attached hereto as <u>Exhibit A</u> and incorporated herein for all purposes (the "Contract").

3.      The following is a brief summary of certain key provisions of the Contract submitted by Buyer:

a.      <u>Parties</u>:  The Parties to the Contract are Debtor, as "Seller" and Loma Linda as Buyer;

b.      <u>Purchased Assets</u>:  The asset to be sold is Tract 1, Tract 2, Tract 8 and Tract 9 consisting of approximately 1,344.44 acres, more or less, as more particularly described in the Contract.

c.      <u>Purchase Price</u>: In consideration for the sale of the Property, the Buyer shall pay to Debtor at closing, a cash purchase price of $3,520,000.00 or approximately $2,618.17 per acre;

d.      <u>Deposit</u>:  Buyer has deposited $50,000.00  as  earnest money which has been receipted with Neel Title Company, Laredo, Texas; and

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                                    Page **2** of **8**

e.     Closing: Subject to Court approval, and completion of the procedures contemplated in the Bid Procedures Motion [Docket No. 35], the sale proceeds will be paid in cash at closing.

## RELIEF REQUESTED

4.     Debtor requests that this Court grant it authority to sell the Property free and clear of all liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f).  Debtor asserts that the purchase price for the Property represents the fair market value of the Property.  The Debtor believes that the sale of the Property is in the best interest of the Estate.  The Debtor is familiar with Buyer and is satisfied that the Buyer has sufficient assets to close the sale.

5.     Section 363(b)(1) of the Bankruptcy Code provides that the Trustee, after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate.  11 U.S.C. § 363(b)(1).  Courts have uniformly held that approval of a proposed sale of property pursuant to § 363(b) of the Bankruptcy Code is appropriate if the Court finds that the transaction represents a reasonable business judgment on the part of the Debtor.  *See*, *Institutional Creditors of Continental Airlines, Inc. vs. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *See also, In re Terrace Gardens Park Partnership,* 96 B.R. 707, 713-714 (Bankr. W.D. Tex. 1989) (recognizing the debtor-in-possession's potential necessity of selling some of its assets to slim down as part of the reorganization process preliminary to a plan and the business justification required to do so).

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                                      Page **3** of **8**

6.      Contemporaneously herewith the Debtor has filed its Motion to Establish Bid Procedures [Docket No. 35] subject to compliance with the Bid Procedures as may be established by this Court through Bid Procedures Motion, the Debtor believes that, the sale of the Property pursuant to the Contract represents a prudent and proper exercise of its business judgment and is supported by the articulated business reasons.

7.      Debtor requests authority to transfer the Property free and clear of any and all liens, claims and encumbrances, except those expressly assumed by Buyer pursuant to the Contract. Specifically, the Buyer requires as a condition to closing that that the sale be free and clear of all hunting, grazing and wind energy leases on the Property.  Additionally, pursuant to 11 U.S.C. § 363(m) a good faith purchaser is one who purchases assets for value, in good faith.  The Debtor submits that as a result of the proposed sale, which has been negotiated in good faith and at arms-length between Debtor and Loma Linda with the assistance of Mr. Pellegrin, Loma Linda satisfies the good faith purchaser standard under 11 U.S.C. § 363(m).

8.      Debtor requests that this Court direct the order approving the proposed transaction become effective immediately upon its entry, notwithstanding the stay provisions set forth in Bankruptcy Rule 6004(g), such that the stay provisions will not apply to the order approving the sale.  Bankruptcy Rule 6004(g) provides that an order authorizing the use, sale or lease of property, other than cash collateral, is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." *See,* Bankruptcy Rule 6004(g).  Loma Linda and the Debtor desire to close as soon as possible on the sale of the Property.  As a consequence, and as permitted by the

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                                    Page **4** of **8**

Bankruptcy Rules, Debtor requests waiver of the fourteen (14) day period for effectiveness provided in Bankruptcy Rule 6004(g).

9.      Debtor believes that the relief requested herein will help to maximize the value of the Debtor's assets and facilitate the ultimate reorganization of the Debtor.

WHEREFORE, based upon the foregoing, Debtor respectfully requests that this Court approve the sale of the Sale Property pursuant to the Contract, free and clear of all liens, claims and encumbrances, including, but not limited to all grazing, hunting and wind energy leases.   Debtor requests authority to pay at closing (1) its pro rata share of the 2014 ad valorem taxes assessed against the Property, (2) the Seller's closing costs, and (3) the broker's fee.  The Debtor further requests that the Court waive the 14-day stay period of Bankruptcy Rule 6004(g), together with such other and further relief as it may show itself justly entitled.

Respectfully submitted,

Luttrell + Villarreal Law Group
400 N. Loop 1604E, Ste. 208
San Antonio, Texas 78232
Tel. 210.426.3600
Fax. 210.426.3610

/s/ Leslie M. Luttrell
Leslie M. Luttrell
State Bar No. 12708650
S.D.TX Bar No. 24152

Special Counsel for the Debtor

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                                                 Page **5** of **8**

**Law Offices of Carl Barto**
Carl Michael Barto
State Bar No. 01852100
S.D.TX Bar No. 6830
817 Guadalupe St.
Laredo, Texas 78040
Telephone: 956.725.7500
Facsimile: 956.722.6739
Counsel for the Debtor

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of September, 2014 a true and correct copy of the foregoing has been served pursuant to the ECMF filing and notice procedures or in the manner indicated to the following parties:

<u>**Debtor**</u>

GBG Ranch, Ltd.                                     Via U.S. Regular Mail
1019 Chihuahua
Laredo, Texas 78041

<u>**Creditors**</u>**: via regular mail**

| Anam Management, L.C.<br>318 Bordeaux<br>Laredo, Texas 78041 | Dan Hanke<br>2161 NW Miliary HWY, Ste 103<br>San Antonio, Texas 78213 |
|---|---|
| Anam, LTD<br>318 Bordeaux<br>Laredo, Texas 78040 | Dan King<br>Bordas Wind Energy<br>3650 Locklane<br>Houston, Texas 77027 |
| Benavides Family Minerals, LTD<br>1019 Chihuahua<br>Laredo, Texas 78040 | Diane W. Sanders<br>Linebarger Goggan Blair & Sampson,<br>LLP P.O. Box 17428<br>Austin, TX 78760-7777 |
| Carl J. Kolb PC<br>916 Chulie<br>San Antonio, Texas 78210 | GBG Cattle & Hunting Co. LLC<br>1019 Chihuahua<br>Laredo, Texas 78040 |

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                     Page **6** of **8**

| | |
|---|---|
| City of Laredo<br>c/o Flores & Saucedo, PLLC<br>5517 McPherson Rd. Ste. 14<br>Laredo, TX 78041 | Golden West Oil<br>PO Box 6127<br>Austin TX 78762 |
| Cliff Davis<br>PO Box 439<br>Carizzo Spring, Texas 78834 | Guillermo Benavides Garza<br>Investment Company<br>1019 Chihuahua<br>Laredo, Texas 78040 |
| Corrected Quita Wind Lease<br>1918 Guerrero St.<br>Laredo, Texas 78043 | Guillermo Benavides Z.<br>318 Bordeaux<br>Laredo, Texas 78045 |
| Guillermo R. Benavides<br>1918 Guerrero St.<br>Laredo, TX 78043 | Rafael Morales<br>1301 Chacon<br>Laredo, Texas 78041 |
| Guillermo R. Benavides<br>1918 Guerrero St.<br>Laredo, TX 78043 | Raul Vasquez<br>7718 McPherson Ste. f-105<br>Laredo, Texas 78045 |
| Huisache Cattle Co. LTD.<br>HCR 1 Box 5<br>Aguilares, Texas 78369 | Residuary Trust under the Will of<br>Guillermo Benavides Garza<br>1019 Chihuahua<br>Laredo, Texas 78040 |
| Robert C. Cadena d/b/a 3C Cattle Co.<br>800 E. Mann Rd. Ste. 103<br>Laredo, TX 78041 | Kandy Walker<br>5210 San Bernardo Ste. 101<br>Laredo, Texas 78041 |
| Torrecillos Wind Energy, LLC<br>3000 El Camino Real<br>S. Palo Alto Square, Suite 700<br>Palo Alto CA 94306-2122 | Marcel Frey<br>3200 Southwest Freeway Ste. 1900<br>Houston, Texas 77027 |
| United I S D<br>c/o Guillermo Alarcon<br>1302 Washington St.<br>Laredo, TX 78040 | WEBB CISD C/O<br>Linebarger Goggan Blair & Sampson, LLP<br>P.O. Box 17428<br>Austin, TX 78760-7428 |
| Quita Wind Energy Company LLC<br>1918 Guerrero St.<br>Laredo, Texas 78043 | Webb County<br>c/o Castillo, Montemayor & Solis, PC<br>7718 McPherson Rd. Ste. #F105<br>Laredo, TX 78045 |

**Parties in Interest and Counsel Filing Appearances**

James A. Hoffman
Clemens & Spencer
112 E. Pecan St., Suite 1300
San Antonio, Texas 78205

Barbara C. Jue
Office of the U.S. Trustee
606 N Carancahua, Ste. 1107
Corpus Christi, Texas 78401

Hugo Flores
Rancho Loma Linda
PO Box 450047
Laredo, Texas 78045

/s/ Leslie M. Luttrell
Leslie M. Luttrell

Case No. 14-50155
Debtor's Motion to Sell Property Free and Clear of Liens,
Claims and Encumbrances                                    Page **8** of **8**

**EXHIBIT "A"**

STATE OF TEXAS
COUNTY OF WEBB
We hereby certify that
this is a true and correct
copy. NEEL TITLE CORP
By: _____

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## FARM AND RANCH CONTRACT

**1. PARTIES:** The parties to this contract are _____ GBG RANCH LTD _____

(Seller) and _____ RANCHO LOMA LINDA AND OR ASSIGNS _____ (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements, accessories and crops except for the exclusions and reservations, are collectively referred to as the "Property".

A. LAND: The land situated in the County of _____ Webb _____, Texas, described as follows: 1344.44 ACRES MORE OR LESS KNOWN AS TRACTS 1,2,8,9  HILL RANCH

or as described on attached exhibit, also known as _____

_____
(address/zip code), together with all rights, privileges, and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships.

B. IMPROVEMENTS:
   (1) FARM and RANCH IMPROVEMENTS: The following **permanently installed and built-in items**, if any: windmills, tanks, barns, pens, fences, gates, sheds, outbuildings, and corrals.
   (2) RESIDENTIAL IMPROVEMENTS: The house, garage, and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items**, if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property owned by Seller and attached to the above described real property.

C. ACCESSORIES:
   (1) FARM AND RANCH ACCESSORIES: The following described related accessories: (check boxes of conveyed accessories) ☒ portable buildings ☐ hunting blinds ☐ game feeders ☒ livestock feeders and troughs ☐ irrigation equipment ☐ fuel tanks ☒ submersible pumps ☒ pressure tanks ☒ corrals ☒ gates ☒ chutes ☐ other: _____

   (2) RESIDENTIAL ACCESSORIES: The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, and controls for: (i) garages, (ii) entry gates, and (iii) other improvements and accessories.

D. CROPS: Unless otherwise agreed in writing, Seller has the right to harvest all growing crops until delivery of possession of the Property.

E. EXCLUSIONS: The following improvements, accessories, and crops will be retained by Seller and must be removed prior to delivery of possession of: N/A

F. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum or Special Provisions.

**3. SALES PRICE:**

A. Cash portion of Sales Price payable by Buyer at closing ................. $ _____ 3,520,000.00

B. Sum of all financing described below (excluding any loan funding fee or mortgage insurance premium)............................... $ __ (3,520,000.00)

C. Sales Price (Sum of A and B) ....................................... $ _____

D. The Sales Price ☒ will ☐ will not be adjusted based on the survey required by Paragraph 6C. If the Sales Price is adjusted, the Sales Price will be calculated on the basis of $ 2,618.17 per acre. If the Sales Price is adjusted by more than 10%, either party may terminate this contract by providing written notice to the other party within _____ 10 _____ days after the terminating party receives the survey. If neither party terminates this contract or if the variance is 10% or less, the adjustment will be made to the amount in ☒ 3A ☐ 3B ☐ proportionately to 3A and 3B.

**4. FINANCING (Not for use with reverse mortgage financing):** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
☐ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of $ _____ (excluding any loan funding fee or mortgage insurance premium).
   (1) Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s) (including, but not limited to appraisal, insurability and lender required repairs), Buyer may terminate this contract by giving notice to Seller prior to closing and the earnest money will be refunded to Buyer.

TAR 1701    Initialed for identification by Buyer _HGF_ and Seller _MGD_    TREC NO. 25-10

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 2 of 9 4-28-2014
                                                    (Address of Property)

    (2) Credit Approval: (Check one box only)
      ☐ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Addendum for Credit Approval.
      ☒ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of $ _____ , secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

5. **EARNEST MONEY:** Upon execution of this contract by all parties, Buyer shall deposit $50,000.00 _____ as earnest money with _____ Neel Title Corporation _____ , as escrow agent, at _____ 1202 WELBY COURT LAREDO TX 78041 _____ (address). Buyer shall deposit additional earnest money of $ _____ with escrow agent within _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

6. **TITLE POLICY AND SURVEY:**
  A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by: _____ Neel Title Corportation _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
    (1) The standard printed exception for standby fees, taxes and assessments.
    (2) Liens created as part of the financing described in Paragraph 4.
    (3) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
    (4) The standard printed exception as to marital rights.
    (5) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
    (6) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements: ☒ (i) will not be amended or deleted from the title policy; ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☐ Seller.
  B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If, due to factors beyond Seller's control, the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.
  C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only):
    ☒ (1) Within _____ 15 _____ days after the effective date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** The existing survey ☒ will ☐ will not be recertified to a date subsequent to the effective date of this contract at the expense of ☐ Buyer ☒ Seller. If the existing survey is not approved by the Title Company or Buyer's lender(s), a new survey will be obtained at the expense of ☐ Buyer ☐ Seller no later than 3 days prior to Closing Date.
    ☐ (2) Within _____ days after the effective date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.
    ☐ (3) Within _____ days after the effective date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.
    ☐ (4) No survey is required.
  D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title disclosed on the survey other than items 6A(1) through (5) above; or disclosed in the Commitment other than items 6A(1) through (6) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency

TAR 1701   Initialed for identification by Buyer _HGF._ and Seller _n.a.b._   TREC NO. 25-10

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 3 of 9 4-28-2014
                                    (Address of Property)

Management Agency map; or (iii) any exceptions which prohibit the following use or activity:

_____

Buyer must object the earlier of (i) the Closing Date or (ii) _____5_____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

E. EXCEPTION DOCUMENTS: Prior to the execution of the contract, Seller has provided Buyer with copies of the Exception Documents listed below or on the attached exhibit. Matters reflected in the Exception Documents listed below or on the attached exhibit will be permitted exceptions in the Title Policy and will not be a basis for objection to title:

| Document | Date | Recording Reference |
|---|---|---|
| | | |
| | | |
| | | |

F. SURFACE LEASES: Prior to the execution of the contract, Seller has provided Buyer with copies of written leases and given notice of oral leases (Leases) listed below or on the attached exhibit. The following Leases will be permitted exceptions in the Title Policy and will not be a basis for objection to title: _____

G. TITLE NOTICES:
   (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
   (2) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
   (3) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
   (4) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.
   (5) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.
   (6) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic

TAR 1701   Initialed for identification by Buyer _HGF_ and Seller _M.R._   TREC NO. 25-10

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 4 of 9 4-28-2014
(Address of Property)

installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(7) TEXAS AGRICULTURAL DEVELOPMENT DISTRICT: The Property ☐ is ☒ is not located in a Texas Agricultural Development District. For additional information contact the Texas Department of Agriculture.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

**7. PROPERTY CONDITION:**

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect .
NOTICE: Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):
(Check one box only)
☐ (1) Buyer has received the Notice
☐ (2) Buyer has not received the Notice. Within _____ days after the effective date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☒ (3) The Texas Property Code does not require this Seller to furnish the Notice.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
_____
(Do not insert general phrases, such as "subject to inspections," that do not identify specific repairs and treatments.)

E. COMPLETION OF REPAIRS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete repairs.

F. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 5 of 9 4-28-2014
(Address of Property)

H. SELLER'S DISCLOSURES: Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
  (1) any flooding of the Property which has had a material adverse effect on the use of the Property;
  (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
  (3) any environmental hazards or conditions materially affecting the Property;
  (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
  (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
  (6) any threatened or endangered species or their habitat affecting the Property.

I. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company licensed by TREC. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ _____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

J. GOVERNMENT PROGRAMS: The Property is subject to the government programs listed below or on the attached exhibit: N/A _____
_____.
Seller shall provide Buyer with copies of all governmental program agreements. Any allocation or proration of payment under governmental programs is made by separate agreement between the parties which will survive closing.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
A. The closing of the sale will be on or before _____ November 30 _____, 2014 , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
  (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6, an assignment of Leases, and furnish tax statements or certificates showing no delinquent taxes on the Property.
  (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
  (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
  (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.
  (5) If the Property is subject to a residential lease, Seller shall transfer security deposits (as defined under §92.102, Property Code), if any, to Buyer. In such an event, Buyer shall deliver to the tenant a signed statement acknowledging that the Buyer has received the security deposit and is responsible for the return of the security deposit, and specifying the exact dollar amount of the security deposit.

10. **POSSESSION:**
A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. Leases:
  (1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
  (2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 6 of 9   4-28-2014
(Address of Property)

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)
BUYER WILL CONSIDER THIS CONTRACT NULL AND VOID UNLESS RANCH IS FREE AND
CLEAR OF ANY LIENS, CLAIMS, ENCUMBRANCES INCLUDING BUT NOT LIMITED TO  QUITA
WIND ENERGY CO LLC. CONTRACT IS SUBJECT TO BANKRUPTCY COURT APPROVAL. BUYER
REQUIRES A 20 DAY FEASIBILITY PERIOD, AND WILL CLOSE WITHIN 45 DAYS.

**12. SETTLEMENT AND OTHER EXPENSES:**
  A. The following expenses must be paid at or prior to closing:
    (1) Expenses payable by Seller (Seller's Expenses):
      (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
      (b) Seller shall also pay an amount not to exceed $ _____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
    (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; adjusted origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
  B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
  A. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year. Rentals which are unknown at time of closing will be prorated between Buyer and Seller when they become known.
  B. ROLLBACK TAXES: If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property claimed by Seller results in Assessments for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer, (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable

TAR 1701    Initialed for identification by Buyer _____ and Seller _____ — TREC NO. 25-10
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Frasor, Michigan 48026  www.zipLogix.com    HUGO G FLORES

Contract Concerning _____ **TRACTS 1,2,8,9 HILL RANCH** _____ Page 7 of 9   4-28-2014
(Address of Property)

relief from a court of competent jurisdiction.

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18. **ESCROW:**
   A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.
   C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages in an amount equal to the sum of: (i) three times the amount of the earnest money; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back-up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

| **To Buyer at:** | **To Seller at:** |
|---|---|
| HUGO G FLORES | GBG RANCH LTD |
| PO BOX 450047 | 1019 CHIHUAHUA |
| LAREDO TX 78045 | LAREDO TX 78040 |
| Telephone: _____ | Telephone: _____ |
| Facsimile: _____ | Facsimile: _____ |
| E-mail: | E-mail: |

TAR 1701    Initialed for identification by Buyer _HGF_ _____ and Seller _mps_    **TREC NO. 25-10**

Contract Concerning _____ TRACTS 1,2,8,9 HILL RANCH _____ Page 8 of 9   4-28-2012
(Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☐ Third Party Financing Addendum for Credit Approval

☐ Seller Financing Addendum

☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Other (list): INFORMATION ABOUT REAL ESTATE SERVICES

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ _____ (Option Fee) within 3 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract (Option Period). If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate licensees from giving legal advice. READ THIS CONTRACT CAREFULLY.

| | |
|---|---|
| Buyer's<br>Attorney is: _Michael H. Rodgers_ | Seller's<br>Attorney is: LESLIE M LUTTRELL |
| _Graystaff Gaedke + Edgum, PC_ | 400 N LOOP 1604 E. SUITE 208 |
| Telephone: _210 - 348-6600_ | Telephone: (210) 426-3600 |
| Facsimile: _210 - 366-0892_ | Facsimile: (210) 426-3610 |
| E-mail: _mrodgers @ CAglaw. Net_ | E-mail: LUTTRELL@LZLAWGROUP.COM |

EXECUTED the _17th_ day of _September_ , _2014_ (EFFECTIVE DATE).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

_Idugo G. Flores_
Buyer

_Mark Dewit_
Seller

_____
Buyer

_____
Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 25-10. This form replaces TREC NO. 25-9.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      HUGO G FLORES

| Contract Concerning | TRACTS 1,2,8,9 HILL RANCH | Page 9 of 9   4-28-2014 |
|---|---|---|

(Address of Property)

## RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total Sales Price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Other Broker:                                                     Listing Broker:
By: _____          By: _____

## BROKER INFORMATION AND AGREEMENT FOR PAYMENT OF BROKERS' FEES

| | | | LOUIS PELLEGRIN | 0215361 |
|---|---|---|---|---|
| Other Broker | License No. | | Listing or Principal Broker | License No. |

Licensed Supervisor of Associate   Telephone         Licensed Supervisor of Associate   Telephone

Associate                                                          Associate

Address                                                            Address
                                                                   1616 Guerrero          TX      78043
City              State            Zip                   City                    State    Zip
                                                                   (956) 712-1975                  (956) 726-6990
Telephone                         Facsimile              Telephone                        Facsimile
                                                                   lpproperties@earthlink.net
E-mail                                                             E-mail
represents ☐ Buyer only as Buyer's agent                represents ☒ Seller only
           ☐ Seller as Listing Broker's subagent                    ☐ Buyer only
                                                                    ☐ Seller and Buyer as an intermediary

Upon closing of the sale by Seller to Buyer of the Property described in the contract to which this fee agreement is attached: (a) ☒ Seller ☐ Buyer will pay Listing/Principal Broker ☐ a cash fee of $ _____ or ☒ _2.500_ % of the total Sales Price; and (b) ☐ Seller ☐ Buyer will pay Other Broker ☐ a cash fee of $ _____ or ☐ _____ % of the total Sales Price. Seller/Buyer authorizes and directs Escrow Agent to pay the brokers from the proceeds at closing.

Brokers' fees are negotiable. Brokers' fees or the sharing of fees between brokers are not fixed, controlled, recommended, suggested or maintained by the Texas Real Estate Commission.

Seller _____          Buyer _Hugo G. Flores_____

Seller _____          Buyer _____

## OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker                                 Date

## CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☑ Contract and ☑ $ _50,000.00_ Earnest Money in the form of _check # 2770_ is acknowledged.
Escrow Agent: _Neel Title Corp._____          Date: _9-17-14_____

By: _Angelica Ramirez_____          _rrendon@neetitle.com_
                                                                   Email Address
_1202 Welby Court_____          Telephone: _956-729-9435_
Address
_Laredo, TX 78041_____          Facsimile: _956-723-5858_
City              State            Zip

TAR 1701                                                          TREC NO. 25-10

## Exhibit 1

### Special Provisions to Farm and Ranch Contract
### Between GBG Ranch, Ltd., Debtor-In-Possession, as Seller, and
### Rancho Loma Linda, and/or assigns, as Buyer

Pursuant to this the Special Provisions to Farm and Ranch Contract Between GBG Ranch, Ltd., Debtor-In-Possession, as Seller, and Rancho Loma Linda, and/or assigns, as Buyer ("Special Provisions") which is incorporated in its entirety into the Contract, the Buyer and Seller hereby agree as follows:

1. Notwithstanding anything contained in the Contract, the closing of the Contract is expressly conditioned upon the approval of the United States Bankruptcy Court for Southern District of Texas, Laredo Division in Case No. 14-10155 styled *In re GBG Ranch, Ltd.*

2. GBG Ranch, Ltd. shall promptly file an application with the Bankruptcy Court seek the approval of the Contract. The Buyer agrees and acknowledges that the Contract is subject to higher and better offers.

3. Paragraph 1.F. RESERVATIONS: is deleted in its entirety and replaced with the following:

    1.F. RESERVATIONS: 100% of all oil, gas and other subsurface minerals, including all hydrocarbons, under the Property are reserved from the conveyance of the Property.

4. Paragraph 6.F. SURFACE LEASES: is deleted in its entirety and replaced with the following:

    6.F. SURFACE LEASES: The Property shall be conveyed free and clear of all liens, claims and encumbrances, including all surface leases, whether written or oral, recorded or unrecorded, for hunting, grazing and wind energy generation, including, but not limited to any Wind Lease and Easement Agreement with Quita Wind Energy Co., LLC.

5. Paragraph 7.E.: COMPLETION OF REPAIRS: shall be deleted in its entirety.

6. Paragraph 7.F.: LENDER REQUIRED REPAIRS AND TREATMENTS: shall be deleted in its entirety.

7. Paragraph 7.I.: RESIDENTIAL SERVICE CONTRACTS: shall be deleted in its entirety.

8. Paragraph 9.B(1): the term "general" shall be replaced with the term "special".

9.  Paragraph 10.B.(1): shall be revised to read:
    "After the Effective Date, Seller may not execute any surface leases on the Property.

10. Paragraph 10.B.(2): shall be deleted in its entirety.

APPROVED:

Buyer:

Rancho Loma Linda, a Texas _____LTD_____

By: _____Hugo G. Flores_____
Its: _____

Seller:

GBG Ranch, Ltd.
    By: GBGIC, its General Partner

By: _____
    Manuel A. Benavides
Its:    President



Approved by the Texas Real Estate Commission for Voluntary Use    10-10-11
*Texas law requires all real estate licensees to give the following information about
brokerage services to prospective buyers, tenants, sellers and landlords.*

# Information About Brokerage Services

Before working with a real estate broker, you should know that the duties of a broker depend on whom the broker represents. If you are a prospective seller or landlord (owner) or a prospective buyer or tenant (buyer), you should know that the broker who lists the property for sale or lease is the owner's agent. A broker who acts as a subagent represents the owner in cooperation with the listing broker. A broker who acts as a buyer's agent represents the buyer. A broker may act as an intermediary between the parties if the parties consent in writing. A broker can assist you in locating a property, preparing a contract or lease, or obtaining financing without representing you. A broker is obligated by law to treat you honestly.

## IF THE BROKER REPRESENTS THE OWNER:

The broker becomes the owner's agent by entering into an agreement with the owner, usually through a written - listing agreement, or by agreeing to act as a subagent by accepting an offer of subagency from the listing broker. A subagent may work in a different real estate office. A listing broker or subagent can assist the buyer but does not represent the buyer and must place the interests of the owner first. The buyer should not tell the owner's agent anything the buyer would not want the owner to know because an owner's agent must disclose to the owner any material information known to the agent.

## IF THE BROKER REPRESENTS THE BUYER:

The broker becomes the buyer's agent by entering into an agreement to represent the buyer, usually through a written buyer representation agreement. A buyer's agent can assist the owner but does not represent the owner and must place the interests of the buyer first. The owner should not tell a buyer's agent anything the owner would not want the buyer to know because a buyer's agent must disclose to the buyer any material information known to the agent.

## IF THE BROKER ACTS AS AN INTERMEDIARY:

A broker may act as an intermediary between the parties if the broker complies with The Texas Real Estate License Act. The broker must obtain the written consent of each party to the transaction to act as an intermediary. The written consent must state who will pay the broker and, in conspicuous bold or underlined print, set forth the broker's obligations as an intermediary. The broker is required to treat each party honestly and fairly and to comply with The Texas Real Estate License Act. A broker who acts as an intermediary in a transaction:

(1) shall treat all parties honestly;

(2) may not disclose that the owner will accept a price less than the asking price unless authorized in writing to do so by the owner;

(3) may not disclose that the buyer will pay a price greater than the price submitted in a written offer unless authorized in writing to do so by the buyer; and

(4) may not disclose any confidential information or any information that a party specifically instructs the broker in writing not to disclose unless authorized in writing to disclose the information or required to do so by The Texas Real Estate License Act or a court order or if the information materially relates to the condition of the property.

With the parties' consent, a broker acting as an intermediary between the parties may appoint a person who is licensed under The Texas Real Estate License Act and associated with the broker to communicate with and carry out instructions of one party and another person who is licensed under that Act and associated with the broker to communicate with and carry out instructions of the other party.

**If you choose to have a broker represent you,** you should enter into a written agreement with the broker that clearly establishes the broker's obligations and your obligations. The agreement should state how and by whom the broker will be paid. You have the right to choose the type of representation, if any, you wish to receive. Your payment of a fee to a broker does not necessarily establish that the broker represents you. If you have any questions regarding the duties and responsibilities of the broker, you should resolve those questions before proceeding.

---

Real estate licensee asks that you acknowledge receipt of this information about brokerage services for the licensee's records.

_____
Buyer, Seller, Landlord or Tenant                                    Date

Texas Real Estate Brokers and Salespersons are licensed and regulated by the Texas Real Estate Commission (TREC). If you have a question or complaint regarding a real estate licensee, you should contact TREC at P.O. Box 12188, Austin, Texas 78711-2188 , 512-936-3000 (http://www.trec.texas.gov)

(TAR-2501) 10-10-11                                                    TREC No. OP-K

L P Properties, 1616 Guerrero Laredo, TX 78043
Phone: 956-712-1975        Fax:              Louis Pellegrin                    HUGO G FLORES
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

RANCHO LOMA LINDA, LTD.
P.O. BOX 450047
LAREDO, TX 78040

2770

88-2481/1149

9-16-14
Date

Pay to the
Order of _____ Neel Title _____ $ 50,000.00

Fifty thousand dollars + %oo _____ Dollars

Texas
Community
Bank
8721 McPherson Rd. Laredo, Texas 78041
956-722-8333

For _____ GBG Ranch - Tract 1,2,8,9 _____ Hugo G. Flores

⑉ 1149248 10⑉ 2770

# NEEL TITLE CORPORATION

1202 Welby Ct. Laredo, TX 78041     P.O. Box 450029 Laredo, TX 78041
Phone (956) 723-6346     Fax (956) 723-5858     Toll Free (888) 633-6346

## RECEIPT OF EARNEST MONEY CONTRACT AND/OR DEPOSIT AND ESCROW AGENTS AGREEMENT

THIS RECEIPT AND AGREEMENT IS ATTACHED TO THAT CERTAIN EARNEST MONEY CONTRACT IDENTIFIED AS FOLLOWS:

SELLER (S):  GBG RANCH LTD

BUYER (S):  RANCHO LOMA LINDA

DATE CONTRACT WAS BROUGHT IN:  SEPTEMBER 17, 2014

PROPERTY ADDRESS:  1344.44 ACRES, HILL RANCH
                   WEBB COUNTY

NEEL TITLE CORPORATION ( ESCROW AGENT ) HEREBY ACKNOWLEDGES RECEIPT OF AN ORIGINAL OR COPY OF THE ABOVE REFERENCED EARNEST MONEY CONTRACT/SALE AND PURCHASE AGREEMENT ( THE AGREEMENT) AND RECEIPT OF THE SUM OF ( $50,000.00 ) IN THE FORM OF ( CHECK# 2770 ) TENDERED EARNEST MONEY ( THE ESCROW DEPOSIT ) IN CONNECTION WITH THIS TRANSACTION. ESCROW AGENT AGREES TO HOLD AND DISBURSE THE ESCROW DEPOSIT IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE AGREEMENT, EXCEPT AS MODIFIED BY, AND SUBJECT TO ALL OF THE FOLLOWING TERMS AND CONDITIONS:

1. IF THE ESCROW DEPOSIT HAS BEEN MADE BY CHECK, ESCROW AGENT DOES NOT GUARANTEE THE PAYMENT THEREOF UNTIL SAID CHECK HAS BEEN PAID IN FUNDS ON DEPOSIT IN THE ACCOUNT OF THE ESCROW AGENT, AND ESCROW AGENT WILL NOT BE LIABLE FOR INTEREST OR OTHER CHANGES ON THE ESCROW DEPOSIT.

2. ESCROW AGENT DOES NOT ASSUME AND DISCLAIMS ANY LIABILITY ON ACCOUNT OF THE PERFORMANCE OR NON- PERFORMANCE OF ANY PARTY TO THE AGREEMENT.

3. ESCROW AGENT DOES NOT ASSUME AND DISCLAIMS ANY OF THE OBLIGATIONA IMPOSED UPON ANY PARTIES UNDER THE AGREEMENT.

4.ESCROW AGENT WILL NOT BE LIABLE OR RESPONSIBLE FOR FURNISHING ANY ITEMS UNDER THE AGREEMENT NOR FOR MEETING ANY DEADLINES SPECIFIED THEREIN, UNLESS (i) A PARTY TO THE AGREEMENT MAKES WRITTEN REQUEST UPON ESCROW AGENT TO FURNISH THE ITEM OR MEET THE DEADLINE, (ii) ESCROW AGENT AGREES IN WRITING TO FURNISH THE ITEM OR MEET THE DEADLINE, AND (iii) ESCROW AGENT IS PAID A REASONABLE FEE SET BY ESCROW AGENT FOR SUCH SERVICES.

5. IF PRIOR THE RECEIPT OF THIS AGREEMENT AND ESCROW DEPOSIT, ESCROW AGENT HAS RECEIVED ANY OTHER EARNEST MONEY CONTRACT (S) AND /OR EARNEST MONEY DEPOSIT (s) CONCERNING THE PROPERTY WHICH IS THE SUBJECT OF THE AGREEMENT, THE RECEIPT OF THIS AGREEMENT AND ESCROW

DEPOSIT IS SUBJECT TO THE PRIOR CONTRACT (S) AND DEPOSIT (S). FURTHER, ANY RECEIPT OF ANY ADDITIONAL EARNEST MONEY CONTRACT CONCERNING THE PROPERTY WHICH IS THE SUBJECT OF THE AGREEMENT, AMENDMENTS THERETO, OR ADDITIONAL EARNEST MONEY, SUBSEQUENT TO THE DATE HEREOF, IS ALSO TO ALL OF THE TERMS AND CONDITIONS CONTAINED HEREIN.

6. IF ESCROW AGENT HAS EXPENDED ANY FUNDS, ORDERED ANY WORK DONE OR INCURRED ANY LIABILITY OR EXPENSE IN CONNECTION WITH THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, FEES OR EXPENSES FOR SURVEYS, APPRAISALS, ATTORNEY'S FEES AND /OR ITS FEE FOR  SERVING AS ESCROW AGENT (THE TRANSACTION COSTS ANS EXPENSES) ESCROW AGENT SHALL HAVE THE RIGHT TO PAY ALL TRANSACTION COSTS AND EXPENSES, DISCHARGE ALL LIABILITIES, REIMBURSE ITSELF FOR ALL TRANSACTION COSTS AND EXPENSES PAID, AND/OR PAY ATTORNEYS FEE'S FOR FILLING ANY INTERPLEADER PROCEEDING, FROM THE ESCROW DEPOSIT.

7. WHETHER OR NOT THE AGREEMENT MAY BE CONSIDERED TO GIVE  SPECIFIC DIRECTIONS WITH RESPECT TO THE DISPERAL OR RELEASE OF THE ESCROW DEPOSIT, AND NOTWITHSTANDING ANTHING IN THE  AGREEMENT TO THE CONTRARY, ESCROW AGENT MAY, AT ITS SOLE AND ABSOLUTE DISCREATION, REQUIRE THE WRITTEN RELEASE AND AUTHORIZATION FROM ALL PARTIES TO THE AGREEMENT (INCLUDING BROKERS) BEFORE PAYING OR  DISBURSING THE ESCROW DEPOSIT  OR ANY OTHER FUNDS, AND MAY, AT ITS SOLE AND ABSOLUTE DISCRETION,  REQUIRE WRITTEN AUTHORIZATION FROM SUCH PARTIES BEFORE DELIVERING ANY DOCUMENTS UNDER  THE AGREEMENT. FURTHER, ESCROW AGENT MAY REQIRE THAT THE PARTIES TO THE AGREEMENT (INCLUDING BROKERS) CERTIFY TO THE ESCROW AGENT THAT THE TRANSACTION HAS BEEN CLOSED TO THE SATISFACTION OF ALL SUCH PARTIES, FAILING WHICH, ESCROW AGENT MAY FILE AN INTERPLEADER ACTION WITH  A COURT OF COMPETENT JURISDICTION, AND ESCROW AGENT MAY PAY AND ALL FEES FOR SILLING SUCH PROCEEDING, FEES FOR SERVING THE CITATION AND ALL OTHER COURTS AND EXPENSES, INCLUDING ESCROW AGENT'S ATTORNEY FEES, FROM THE ESCROW DEPOSIT, PAY OR DEDUCT ALL TRANSACTION COSTS AND EXPENSES, AND DEPOSIT ALL REMAINING  FUNDS AND INSTRUMENTS HELD BY THE ESCROW AGENT INTO THE REGISTRY OF THE COURT, AND ESCROW AGENT SHALL HAVE NO FURTHER LIABILITY OR RESPOSIBILITY THEREFOR.

8. ESCROW AGENT ASSUMES NO LIABILITY EXCEPT THAT OF A STAKEHOLDER. ESCROW AGENT'S DUTIES ARE LIMITEDTO THOSE SPECIFICALLY SET OUT IN THIS INSTRUMENT. ESCROW AGENT SHALL INCUR NO LIABILTY TO ANYONE EXCEPT FOR WILLFUL MISCONDUCT OR GROSS NEGLIGENCE.

9. IF THE AGREEMENT CONTAINS A SPECIFIED DATE BY WHICH THE SALE WILL BE CLOSED OR IF IT SETS A CLOSING DATE, ESCROW AGENT DOES NOT WARRANT THE TITLE EXAMINATION WILL BE COMPLETED BY THE DATE OR THAT THE SALE WILL BE CLOSED BY THE DATE AND ASSUMES NO LIABILITY OR RESPONSIBILITY FOR THE TIME OF OCCURRENCE OF ANY MATTERS SPECIFIED IN THE AGREEMENT.

**NEEL TITLE CORPORATION,**

_____                                     **DATE:  SEPTEMBER 17, 2014**
**ANGIE RAMIREZ**