IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| In re:<br><br>**GBG RANCH, LTD.,**<br><br>Debtor. | § <br> § <br> § **Case No. 14-50155** <br> § <br> § **Chapter 11** <br> § <br> § |

# GUILLERMO BENAVIDES, Z'S MOTION TO DISMISS BANKRUPTCY CASE OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THE MOVING PARTY MAY REQUEST AN EXPEDITED SETTING ON THIS MATTER.**

Guillermo Benavides, Z ("Memo Benavides" or "Movant") files this *Motion to Dismiss Bankruptcy Case or in the Alternative, for Appointment Of a Chapter 11 Trustee* (the "Motion"), and respectfully would show the Court the following:

### I. SUMMARY OF ARGUMENT

1. The undisputed facts show that the Debtor is neither insolvent nor unable to pay its debts as they become due. The filed schedules state under oath that the Debtor's assets greatly exceed its liabilities (*See*, Schedules and Statement of Financial

1

Affairs (Docket Nos. 16-18, Summary attached hereto as Ex. 1) - Assets more than $50 million; alleged liabilities less than $10 million). At the Sec. 341 Meeting of Creditors, Debtor testified that it is able to pay its current and regular operating expenses.[1]

2.   The Debtor further indicated that it filed for bankruptcy protection because it currently owes a related entity controlled by the same general partner as the Debtor $500,000 in litigation costs advanced to it by such entity and because it will be unable to pay its regular operating expenses as well as future litigation costs.[2] The Debtor's pretext for seeking bankruptcy protection is contrived.  In order for the Debtor to owe the related entity the past litigation costs as stated, the Debtor would have to ignore the prior agreement between all of the related Benavides Family Entities to share the litigation costs on a percentage basis.[3] Pursuant to the inter-company agreement, the Debtor would only owe thirty percent of the funds advanced after adjustments for the disproportionate amount of funds that the Debtor itself has advanced[4].  The Debtor's schedules do not indicate the existence of a note evidencing the alleged debt nor any obligation of the Debtor to pay the alleged debt in a manner that would prohibit the Debtor from paying its operating expenses as they become due.[5]

3.   The Debtor's contention that it will not be able to pay its normal operating expenses in addition to future litigation costs is equally contrived.  Pursuant to the cost sharing agreement between the related Benavides Family Entities and a series of Rule 11 Agreements, the Debtor's liability for future litigation expenses is limited to $15,000

---

[1] See Transcript of Sec. 341First Meeting of Creditors p 22:18-24;  p 23:12-15 and p 34:11-24 attached as Exhibit 2.
[2] *Id.*
[3] See October 3, 2012 Notice of Meeting of Directors of Guillermo Benavides Garza Investment Co., Managers of GBG Ranch, Ltd. and Mangers of Benavides Family Minerals, Ltd. and Transcript of October 3, 2012 Meeting attached as Exhibit 3.
[4] *Id.*
[5] It is important to note that the creditor, Benavides Family Minerals, Ltd., and the Debtor are controlled by the same general partner, Guillermo Benavides Garza Investment Co, Inc.  ("GBGIC")

per month.[6] The Debtor has sought to manufacture the need for bankruptcy protection by filing a motion to set aside the Rule 11 Agreements to remove the cap on the litigation costs.

4. In reality, the Debtor has filed this bankruptcy proceeding, not because the Debtor is bankrupt, but because the Debtor seeks a new venue for the related adversary proceeding created by the removal of the state court litigation. As a result, this bankruptcy filing is the continuation of a pattern of Guero Benavides'[7] abuse of procedural tools to attempt to gain an unfair advantage over his brother. After an unsuccessful attempt to recuse the state district judge presiding over the underlying family disputes, Guero Benavides has now used his vote, and the proxy vote of his 88-year old mother, to single-handedly authorize this bankruptcy filing, and to strip Memo Benavides and the Benavides brothers' nephew, Will Benavides, of the decision-making power that Memo Benavides and Will Benavides had exercised for years to successfully grow the businesses and provide for members of their family.

5. In 2006, a falling out occurred between brothers Guero Benavides and Memo Benavides due to Guero's admitted substance abuse problems.[8] Since that time, seven lawsuits have been filed, five of which were consolidated into the Consolidated Lawsuit, which was then removed to this Court.

6. The only asset the Debtor owns is the surface estates of three ranches - the Hill, the Corazon and the Oilton. Some of the issues in the Lawsuits relate to the

---

[6] See Rule 11 Agreements attached hereto as Exhibits 4 through 7. See also October 3, 2012 Notice of Meeting of Directors of Guillermo Benavides Garza Investment Co., Managers of GBG Ranch, Ltd. and Mangers of Benavides Family Minerals, Ltd. and Transcript of October 3, 2012 Meeting attached as Exhibit 3.
[7] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion to Remand (Adv. Docket No. 15).
[8] See Guero Benavides' Deposition at 20:9-21:12 taken in Cause No.: 2013CVT000787D1; *Allison Davalos, Individually, and o/b/o Aiden Davalos, Minor vs. Manuel Benavides*, pending in the 49th Judicial District Court, Webb County, Texas. Exhibit 8.

attempted sale of one the Hill and Corazon Ranches by Guero Benavides, without the permission or knowledge of Memo Benavides. Guero Benavides agreed to seek his brother's consent before transferring the Corazon Ranch, and such is required by a series of Rule 11 Agreements entered into among the parties to the Litigation. The attempted sale of the Hill Ranch and the Corazon Ranch required Memo Benavides to file motions for temporary restraining orders and for temporary injunctions and to enforce the Rule 11 Agreements, to preserve and protect the value of the assets of the Debtor.

7. On the eve of the hearing for the injunctive relief related to the Hill and Corazon Ranches, the Debtor and Guero Benavides filed a Motion to Recuse Judge Lopez (the "Motion to Recuse"). On May 28, 2014, the Motion to Recuse was denied by the Hon. David Peeples, the Presiding Judge of the Fourth Administrative Judicial Region. On May 29, 2014, the temporary injunction hearing was initiated. The hearing was continued to July 9, 2014. On July 8, 2014, the Debtor and Guero Benavides filed this bankruptcy case. The next day the Debtor removed the Consolidated Lawsuit.

8. The Debtor's Schedules and Statement of Financial Affairs (Docket Nos. 17 & 18) reflect that, except for a few *de minimis* amounts, the vast majority of creditors are related to the Benavides Family Entities, most of which are controlled by the same general partner.[9] The Debtor has no employees. The Debtor has regular cash flow from certain mineral classified acreage on the Hill Ranch and the grazing and hunting lease payments from a related Benavides entity with respect to all three Ranches[10]. Moreover, the issues related to the Debtor's business are entirely the result of a two-

---

[9] The general partner that controls the Benavides Family Entities is Guillermo Benavides Garza Investment Co., Inc. or GBGIC
[10] GBG Cattle & Hunting, LLC, a Benavides Family Entity, leases all three ranches from the Debtor.

4

212627/2347-24627

party dispute between Guero Benavides and Memo Benavides. The mechanisms for effectuating the sale of the Ranches have already been agreed upon in the Consolidated Lawsuit through a series of Rule 11 Agreements. The reason for this bankruptcy filing was to create the automatic stay, interrupt and delay the injunction hearing scheduled in the Consolidated Lawsuit before Judge Lopez, provide a means to remove the Consolidated Lawsuit from the jurisdiction of Judge Lopez, and to remove the agreed cap on the payment of attorneys fees by the Debtor.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND

10. As detailed in Memo Benavides' *Motion to Remand* (Adv. Docket No. 15), GBG Ranch, Ltd. (the "Debtor") owns the surface estate to three family ranches, and is but one of several Benavides Family Entities that are the subject of a family dispute related to business operations and distribution of resultant revenues. The family dispute resulted in the filing of several lawsuits, one of which was removed to this Court by *Notice of Removal* (Main Case Docket No. 3) – the "Consolidated Lawsuit."[11]

11. Since February of 2011, seven lawsuits have been filed in Webb County, Texas related to the disputes among the various Litigation Parties. The subject of the Lawsuits are detailed in the Motion to Remand, the facts of which are incorporated herein by reference.

---

[11] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the *Motion to Remand*.

5

12. Prior to removal of the Consolidated Lawsuit, all of the Lawsuits were pending before the Hon. Joe Lopez, presiding over the 49th Judicial District Court, Webb County, Texas ("Judge Lopez"). Initially, Judge Lopez presided over each of the Lawsuits independently. However, on or about December 16, 2011, the Debtor, GBGIC, Guero Benavides, and Norma Benavides filed a Motion to Consolidate Actions seeking to consolidate several lawsuits referred to by the parties as the Anam Litigation, GBG Ranch Litigation, Residuary Trust Litigation, BFM Litigation, and the GBGIC Litigation (collectively the "Lawsuits"). Pursuant to Judge Lopez's order (the "Consolidation Order"), the five Lawsuits were merged and substantively consolidated pursuant to Texas Rule of Civil Procedure 174(a) into the Consolidated Lawsuit.

13. Since their filing, the Lawsuits have been litigated extensively in front of Judge Lopez. The parties have spent significant time and resources, and hundreds, if not thousands, of hours over several years litigating numerous issues before Judge Lopez.[12] Judge Lopez has exhibited a remarkable dedication to the adjudication of the Lawsuits, at one point allowing the parties to present evidence in a hearing lasting until midnight. As a result, Judge Lopez has become uniquely familiar with the complex factual allegations and legal issues involved in the underlying Lawsuits.[13]

14. During Judge Lopez's tenure presiding over the Lawsuits, the Litigation Parties have attended multiple mediations spanning several days at a time in front of multiple mediators. The parties agreed to allow the most recent mediator, the Hon. Raul Vasquez (a former Webb County District Judge), to serve as a de facto "receiver"

---

[12] As evidence of the extensive nature of the Lawsuits pending before Judge Lopez, see the Debtors Motions for Extension of Time to Transmit Matters of Record (Docket No. 6, Adv. Docket No. 11).
[13] Indeed, the parties have agreed in writing to a bench trial before Judge Lopez in the GM Rentals Case, which is not the Consolidated Lawsuit.

6

212627/2347-24627

pursuant to a series of four Rule 11 Agreements executed on (1) July 29, 2013 (the "July Rule 11 Agreement"), (2) January 15, 2014 (the "January Rule 11 Agreement"), (3) March 28, 2014 (the "March Rule 11 Agreement"), and (4) as announced in open court before Judge Lopez on May 29, 2014 (the "May Rule 11 Agreement") (collectively, the "Rule 11 Agreements").  The Rule 11 Agreements are attached hereto as Ex 4, 5, 6 and 7 in chronological order respectively, and are incorporated herein by reference. Also during Judge Lopez's tenure presiding over the Lawsuits, the Litigation Parties have fully litigated two appeals, one mandamus and one interlocutory appeal from orders issued by Judge Lopez.  Judge Lopez has a considerable history presiding over the Lawsuits and unique and particular knowledge related to the Litigation Parties, counsel, factual allegations and legal issues asserted in connection with the Lawsuits[14].

15.  The attempted sale of the Corazon Ranch by Guero Benavides, without the permission or knowledge of Memo Benavides was one of the issues involved in the Consolidated Lawsuit.  The permission of Memo Benavides was required by the Rule 11 Agreements executed in conjunction with the Consolidated Lawsuit.  The attempted sale of the Corazon Ranch without the consent of Memo Benavides required him to file a motion for temporary restraining order and for a temporary injunction as well as a motion to enforce the Rule 11 Agreements.  With regard to the sale of the Hill Ranch, Memo Benavides was forced to seek injunctive relief from Judge Lopez to restrain Guero Benavides, Norma Benavides, and GBGIC from marketing and selling the Hill Ranch in violation of his managerial rights.  On the eve of the hearing on the temporary injunction with respect to the sales of the Corazon and Hill Ranches, the Debtor and

---

[14] GBG Ranch, Ltd.; GBG Minerals, Ltd.; Benavides Family Minerals, Ltd; The Guillermo Benavides Garza Residuary Trust, which are all parties to the Consolidated Lawsuit, are collectively referred to as the "Litigation Parties."

Guero Benavides[15] filed a Motion to Recuse Judge Lopez (the "Motion to Recuse") accusing Judge Lopez of bias and prejudice, and accusing the Court's own administrative staff of improper acts.  The Motion to Recuse was heard on May 28, 2014 by the Hon. David Peeples, the Presiding Judge of the Fourth Administrative Judicial Region.  The Motion was denied on the same date

16.    With the Motion to Recuse denied, the parties proceeded with the injunction hearing pertaining to the sale of the Corazon Ranch and Hill Ranch on May 29, 2014.  Due to time constraints, the hearing was continued to July 9, 2014 by agreement of the parties.  On July 8, 2014, the Debtor filed this bankruptcy case.  On July 9, 2014, the date of the scheduled temporary injunction hearing in front of Judge Lopez, the Debtor filed a *Notice of Removal* (Docket No. 3) removing to this Court the Consolidated Lawsuit.[16]  The Debtor in its Notice of Removal advocates for remand of the Residuary Trust Litigation, stating, "the Debtor concedes that [the Residuary Trust Litigation] is unrelated to the administration of the Debtor's estates.  The Debtor acknowledges to this Court that the Residuary Trust Litigation should be remanded to the 49th Judicial District Court for disposition."  Not. of Removal ¶ 1.08

### IV.  RELIEF REQUESTED AND LEGAL AUTHORITY

17.    Section 1112(b) provides authority for this Court to dismiss this case for "cause," including a non-exhaustive set of factors listed in §§ 1112(b)(4)(A)-(P). *See In re Tuli*, 124 Fed. Appx. 830, 831 (5th Cir. 2005) ("Section 1112 sets forth a nonexhaustive list of factors to assist the bankruptcy court in determining when cause

---

[15] In addition to the Debtor and Guero Benavides, Individually, and as a Director of GBGIC, and as Trustee of the Residuary Trust, the other parties to the Motion to Recuse are GBGIC, Norma Benavides, Individually, and as a Director of GBGIC, and as Trustee of the Residuary Trust, and BFM.
[16] The two unconsolidated cases – the GM Rentals Litigation and the Education Trust Litigation – remain unstayed before Judge Lopez.

exists"). Although relief under § 1112(b) is discretionary, proper and judicious application of § 1112(b) is of "vital significance" to the administration of a chapter 11 case. 7 Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick & Harry J. Sommers eds., 15th rev. ed. 2000). To that end, courts consider the totality of circumstances in any given case, in addition to § 1112(b)(4)'s enumerated factors, to reach an appropriate result in individual cases. *See, e.g., In re 15375 Memorial Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009).

18.   As discussed herein, the evidence supports dismissal of this case under § 1112(b) by a preponderance of the evidence. See 7 Collier on Bankruptcy at ¶ 1112.04[8] ("As a general rule, the burden of proof under section 1112(b) rests with the party requesting the relief. Thus, where the matter is contested, the party seeking . . . dismissal must demonstrate the existence of cause by a fair preponderance of the evidence."). *See also In re V Cos.*, 274 B.R. 721, 726 (Bankr. N.D. Ohio 2002) ("The party requesting relief [under section 1112(b)] bears the burden of proving that cause exists by a preponderance of the evidence."); *In re Muskogee Envtl. Conservation Co.*, 236 B.R. 57, 66-67; 69 (Bankr. N.D. Okla. 1999) (granting motion to dismiss based on preponderance of the evidence standard).

   A.   <u>There is cause to dismiss this case because the Debtor did not file this case in good faith</u>.

19.   The good-faith requirement serves to balance the interests of the debtors and creditors. As the Fifth Circuit noted in *Little Creek*:

> [The good faith requirement] furthers the balancing between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve

9

reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons . . . available only to those debtors and creditors with "clean hands."

*In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. Tex.1986).

20. Findings of bad faith are based upon a "conglomerate of factors rather than on any single dictum." *Little Creek*, 779 F.2d at 1072-73. Courts generally conduct a balancing test and "consider any factors which evidence an 'intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors which evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" *In re Boughton*, 243 B.R. 830, 834 (Bankr. M.D. Fla. 2000) (internal citations omitted); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

21. Several recurrent factors that often accompany a bad-faith filing include that: (a) the debtor has only one asset, which is subject to a lien; (b) the debtor engaged in improper pre-petition conduct; (c) the debtor can identify only a few unsecured creditors or has only a few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (d) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court, or the debtor's sole asset is the subject of a foreclosure action as a result of arrearages on the debt; (e) bankruptcy offers the only possibility of forestalling loss of property; (f) the debtor has few employees or no employees except for the principals; (g) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditor; (h) the debtor has no available sources of income to sustain a plan of reorganization; (i) the debtor has no ongoing business or is not engaged in

significant business activities; (j) the lack of possibility of reorganization; (k) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditor to enforce its rights; and (l) the debtor filed solely to create the automatic stay. Here, the Debtor is neither insolvent or unable to pay its debts as they become due. *See, e.g., Little Creek*, 779 F.2d at 1072-73 (applying six factors); *Phoenix Piccadilly*, 849 F.2d at 1394-95 (applying six factors); *In re Chu*, 253 B.R. 92, 95 (S.D. Cal. 2000) (listing various factors); *1020 Warburton Ave. Realty Cor*p., 127 B.R. 333, 335 (Bankr. S.D.N.Y. 1991) (applying seven factors); *In re Grieshop*, 63 B.R. 657, 663 (N.D. Ind. 1986) (listing several factors).

22. As shown herein, the Debtor's case should be dismissed as a bad-faith filing because most of the enumerated "bad-faith factors" are satisfied. These circumstances demonstrate that this bankruptcy proceeding was initiated precisely to delay and frustrate the legitimate efforts of Memo Benavides, and the Litigation Parties and Litigation Entities with which he is aligned, to enforce his rights and the Rule 11 Agreements, which cap attorneys fees and impose a de facto receiver until trial, in the Litigation

23. Many courts have found that filings that are "essentially" two party disputes violate the "good faith" prerequisite to invoking the bankruptcy court's equitable jurisdiction. *In re Shead*, 2008 U.S. Dist. LEXIS 36812, 2008 WL 1995373, 3 (S.D. Tex. 2008) (*quoting In re Anderson Oaks L.P.*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987)). The law is clear that bankruptcy is not to be used as a tool to resolve such a dispute. *See, e.g. In re Phicof, LLC*, 2011 Bankr. LEXIS 4541, 17 (Bankr. W.D. Tex. Nov. 22, 2011) (stating "adding a bankruptcy case does not aid in the resolution of those

[disputed] matters . . . ."). Although there are many Litigation Parties, at the core of the Lawsuits is a dispute between two brothers. A review of the Debtor's Schedules and Statement of Financial Affairs makes clear that except for the Debtor's professionals and a few *de minimis* creditors, the Debtor's creditors are exclusively the related Benavides Family Entities controlled by the same general partner, Guillermo Benavides Investment Company Inc., which in turn is controlled by its sole acting director, Guero Benavides. *See*, Schedules and SOFA (Docket Nos. 16-18) Guero Benavides's attempted use of the bankruptcy process as an alternative to state court procedures to resolve problems related to intra- and inter- company management issues is an abuse of the bankruptcy process and this Court.

    B.    <u>There is cause to dismiss this case because no proper bankruptcy purpose exists</u>.

24. The Debtor has no employees to protect and no necessity for reorganization.

25. The purpose of Chapter 11 of the Bankruptcy Code is to assist financially distressed businesses by providing breathing space to reorganize. *See Lemelle v. Universal Manufacturing Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). The Debtor is not in need of reorganization, as evidenced by the schedules filed in this case stating that the Debtor's assets are far greater than its liabilities (*i.e.*, assets estimated to be $50,000,001-$100,000,000 and liabilities estimated to be $1,000,001-$10,000,000). The removal to this Court was intended to hinder and delay the administration of justice. There is no doubt and, indeed, no argument made by Guero Benavides, that Judge Lopez's court in Webb County was an improper forum. The filing of the Debtor's bankruptcy petition is forum shopping in its purest form, made to afford Guero

Benavides the possibility of removing the Consolidated Lawsuit (after not achieving his desired outcomes) from the jurisdiction of Judge Lopez.

    C.    <u>There is cause to dismiss this case by abstention</u>.

26.    Section 305 of the Bankruptcy Code, provides:

> (a)    The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if---- (1) the interests of the creditors and the debtor would be better served by such dismissal or suspension.

11 U.S.C. §305(a)(1).

27.    Courts may "consider a wide variety of factors relevant to the facts of the particular case in determining whether to abstain under §305." *In re Spade*, 258 B.R. 221, 231 (Bankr. D. Colo. 2001); *see also* In re *Int'l Zinc Coatings & Chemical Corp.*, 355 B.R. 76, 82 (Bankr. N.D. Ill. 2006) ("In making this fact-sensitive determination, courts consider a wide range of factors."). Generally, courts determining whether the interests of creditors and the debtor would be better served by dismissal or suspension have considered the totality of the circumstances, including (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose

13

for which bankruptcy jurisdiction has been sought. *In re Tex. EMC Mgmt.*, 2012 Bankr. LEXIS 700, 8-9 (Bankr. S.D. Tex. Feb. 24, 2012).

28. <u>In the alternative, a Chapter 11 Trustee should be appointed</u>.

29. Section 1104 of the Bankruptcy Code provides, in pertinent part:

(a) the Court shall order the appointment of a trustee –

(i) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case, or similar cause …; or

(ii) if such appointment is in the best interest of creditors, any equity security holders, and other interests of the estate.

11 U.S.C. § 1104(a)(i) and (ii) (emphasis added).

30. "Cause" necessitating the appointment of a trustee may be based on "fraud, dishonesty, incompetence, or gross mismanagement" of a debtor. 11 U.S.C. § 1104(a)(1). By virtue of 11 U.S.C. § 102(3), that list is not exclusive. *See Bellevue Place Assoc.*, 171 B.R. at 622-23. 23. Pre-petition conduct is highly relevant to motions brought pursuant to 11 U.S.C. § 1104. *See, e.g., In re Foundry of Barrington Partnership*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991) (involving misrepresentation of facts concerning historic payments); *In re Rivermeadows Associates, Ltd.*, 185 B.R. 615, 619 (Bankr. D. Wyo. 1995) ("However, the Code is clear that the pre-petition conduct of the debtor's management may be the sole deciding factor.").

31. Other courts have focused upon the following factors in the determination of whether "cause" exists for purposes of section 1104(a)(1):

a. Materiality of the misconduct;

b. Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-à-vis other creditors or customers;

14

    c. The existence of pre-petition voidable preferences or fraudulent transfers;

    d. Unwillingness or inability of management to pursue estate causes of action;

    e. Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor; and

f. Self-dealing by management or waste or squandering of corporate assets. *In re Intercat, Inc.* 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000) (citing *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239 (4th Cir. 1987). See also *In re Clinton Centrifuge, Inc.*, 85 B.R. 980, 985 (Bankr. E.D. Pa. 1988).

    32.    Consideration of the Intercat factors demonstrates the propriety of appointing a trustee in this case.

    33.    Even if the Court does not find that cause exists for the appointment of a trustee under section 1104(a)(1), it is proper under subsection (a)(2) because such an appointment would far better serve the interests of all parties and the bankruptcy estate.

    34.    "Subsection (a)(2) allows appointment of a trustee even when no 'cause' exists…[Instead, it] emphasizes the court's discretion, allowing it to appoint a trustee when to do so would serve the parties' and estate's interests." *Sharon Steel Corp.*, 871 F.2d at 1226 (citing 5 Collier on Bankruptcy, ¶ 1104.01 (15th ed. 1988); 124 Cong. Rec. H11, 102 (daily ed. Sept. 28, 1978)). Under this less stringent standard, the moving party need not show wrongful behavior on the part of management, as long as a meaningful benefit from the appointment of a trustee is shown and the benefit outweighs the burdens and expenses. *See, e.g., In re Cardinal Indus., Inc.*, 109 B.R. 755, 765 (Bankr. S.D. Ohio 1990); *In re Microwave Prods., Inc.*, 102 B.R. 666, 675 (Bankr. W.D. Tenn. 1989).With respect to section 1104(a)(2), courts have considered

the following factors in determining whether appointing a trustee is in the best interests of creditors:

(a) the trustworthiness of the debtor;

(b) the debtor's past and present performance, conduct, and prospects for rehabilitation;

(c) conclusive evidence of detriment to the estate or lack of confidence in present management by creditors; and

(d) the benefits derived from appointment of a trustee, balanced against the costs thereof. *See generally In re Evans*, 48 B.R. 46, 47 (Bankr. W.D. Tex. 1985); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).

35. Other courts have also opined that section 1104(a)(2) requires the balancing of the harms and benefits of removing and retaining the debtor-in-possession. *Dalkon Shield*, 828 F.2d at 241; *Microwave Prods.*, 102 B.R. at 676. The *Microwave Products* court appointed a trustee under section 1104(a)(2), after declining to find cause under (a)(1), because of "elements that hint at fraud," as well as declining confidence in the debtor. *Microwave Prods.*, 102 B.R. at 676. *Cajun Electric Power Coop. v. Cent. La. Electric Co.* (In re *Cajun Electric Power Coop.*), 69 F.3d 746, 748 (5th Cir. 1995), withdrawn, in part, on other grounds, 74 F.3d 599, 600.

In light of the foregoing, it is clear that the bankruptcy case should be dismissed because it was filed in bad faith. As admitted by the Debtor, its assets exceed its liabilities and it is able to pay its normal operating expenses. The Debtor is also able to pay its proportional percentage of litigation costs. As a result, the bankruptcy proceeding is being used solely as a vehicle to remove the Consolidated Case from a

16

forum in which the Debtor no longer wants to participate.  In the alternative, this Court should abstain from exercising jurisdiction or appoint a Chapter 11 Trustee.

WHEREFORE, Memo Benavides requests that the Court dismiss the Debtor's bankruptcy case  or, in the alternative, appoint a Chapter 11 Trustee and also requests such other and further relief to which he may be justly entitled.

Dated:

                Respectfully submitted,

                CLEMENS & SPENCER
                112 E. Pecan St. Suite 1300
                San Antonio 78205
                (210) 227-7121
                (210) 227-0732 (Fax)

By:   */s/ James A. Hoffman*
        James A. Hoffman
        Texas State Bar No. 09781725
        Southern District No. 16172

**ATTORNEYS FOR GUILLERMO BENAVIDES, Z**

## **CERTIFICATE OF SERVICE**

I certify that on September 19, 2014, a true and correct copy of the foregoing Motion has been sent via United States First Class Mail, postage prepaid, to the parties listed below:

Kenneth A. Valls
Rebecca Marroquin
Trevino, Valls & Haynes, LLP
6909 Springfield Ave., Suite 200
Laredo, TX 78041

Jason Davis
Santos Vargas
The Law Offices of Davis & Santos
The Weston Centre
112 E. Pecan Street, Ste. 900
San Antonio, TX 78205

Carl M. Barto
Law Offices of Carl Barto
817 Guadalupe St.
Laredo, TX 78040

Carl J. Kolb
Elizabeth Conry Davidson
Carl J. Kolb, P.C.
926 Chulie
San Antonio, TX 78216

Leslie M. Luttrell
Oscar H. Villarreal
Luttrell & Villarreal Law Group
Afton Oaks
400 N. Loop 1604 E, Suite 208
San Antonio, TX 78232

                                                  */s/ James A. Hoffman*

                                                  JAMES A. HOFFMAN

212627/2347-24627