**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| G.B.G. RANCH, LTD. | § | Case No. 14-50155 |
| | § | Chapter 11 |
| Debtor. | § | |

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

COMES NOW G.B.G. Ranch, Ltd., Debtor-in-Possession ("Debtor"), pursuant to §1121 (a) and proposes the following Plan of Reorganization for the Debtor (the "Plan").

## ARTICLE 1
## SUMMARY OF THE PLAN

The Plan proposes to liquidate the Hill Fee Tracts, *infra,* all of the personal property of the Debtor and all accounts receivable (collectively the "Plan Assets") of the Debtor to pay all of the taxes, administrative expenses, and allowed claims in this case. The Plan will provide for the conveyance of the Corazon, the Oilton and Tract 5 of the Hill (the "Trust Assets") to a Texas domestic trust of maximum duration ("GBG Ranch Trust"). After the settlement of the GBG Ranch Trust, liquidation of the Plan Assets, payment of all allowed costs of administration, including professional fees and U.S. Trustees fees, payment of allowed claims and distributions to equity interest owners, the Debtor will be wound up and terminated in accordance with applicable Texas law.

The Debtor has begun the sale process with the proposed sale of four of the Hill Fee Tracts[1]. [See Dkt No. 37].  The Debtor continues to market the balance of the Hill Fee Tracts[2] with Lou Pellegrin, the Debtor's court approved broker, and is optimistic that these tracts can and will sold at market value.

The Plan contemplates a complete liquidation of the Debtor through the combination of the sale of the Plan Assets and the conveyance of the Trust Assets to the GBG Ranch Trust.  The ultimate goal of this process is to permit each of the Equity Interest Owners of the Debtor to separately receive the value of their interest in the Debtor through the combination of direct cash payment, net of the Plan Obligations, out of the sale of the Plan Assets and receive their respective beneficial interest as Surface Revenue Beneficiaries and/or Wind Revenue Beneficiaries through the GBG Ranch Trust of the life of that trust.   The Court will retain jurisdiction over the Debtor until such time as

---

1 Tracts 1, 2, 8 and 9
2 Tracts 3, 4, 6 and 7

all of the Plan Assets have been sold and all of the Trust Assets have been conveyed to the GBG Ranch Trust.

This Plan contemplates five categories of claims and establishes four (4) classes of claims.   The Administrative Claims consisting of professional fees are unclassified.

All creditors and equity security holders should refer to this Plan for information regarding the precise treatment of their claim.   A disclosure statement that provides detailed information regarding this Plan and the rights of creditors and equity interest holders has been circulated with this Plan.

**YOUR RIGHTS MAY BE AFFECTED.   YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE 2
## DEFINITIONS, CONSTRUCTION AND INTERPRETATION

1. **Definitions**

The capitalized terms used herein shall have the respective meanings set forth below:

**"GBG"** means G.B.G. Ranch, Ltd., the Debtor.

**"Administrative Expense"** or **"Administrative Claim"** means any cost or expense of the administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under §507(a)(1) and allowed under §503(b) of the Bankruptcy Code, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code.

**"Adversary"** means Adversary No. 14-05006 pending in the United States Bankruptcy Court for the Southern District of Texas, Laredo Division.

**"Allowed"** when used with respect to any Claim, except for a Claim that is an Administrative Expense, means (i) such Claim to the extent it is not a Contested Claim; (ii) such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or (iii) a Contested Claim, proof of which was filed timely with the Bankruptcy Court and (a) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (b) as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

**"Avoidance Actions"** means any and all rights, claims and causes of action arising under any provision of Chapter 5 of the Bankruptcy Code, including claims for payments made to creditors within 90 days of the Petition Date that may be avoidable under 11 U.S.C. §547.

**"Ballot"** means the Ballot to be used by creditors to cast their votes or accept or reject the Plan.

**"Bankruptcy Case"** means the above-styled case commenced under Chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date.

**"Bankruptcy Code"** means the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

**"Bankruptcy Court"** means the Bankruptcy Court unit of the United States District Court for the Southern District of Texas, Laredo Division, or such other court having jurisdiction over this Chapter 11 case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to §2075 of title 28 of the United States Code.

**"Bar Date"** means the final date for the filing of proofs of Claims set by the Bankruptcy Court or such other date as may apply to a particular Claim pursuant to a duly entered order of the Bankruptcy Court.

**"Business Day"** means any day on which commercial banks and federal courts are open for business in Laredo, Texas.

**"C&H"** means GBG Cattle & Hunting, LLC, a Texas limited liability company that is an affiliate of the Debtor and the lessee under the Master Lease, *infra*.

**"Cash"** means legal tender of the United States of America or Cash equivalents.

**"Causes of Action"** means, without limitation, any and all claims, actions, adversary proceedings, causes of action (including causes of action arising under any section of the Bankruptcy Code), liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or not known, whether or not scheduled as the asset of the Debtor, disputed or undisputed, legal or equitable, absolute or contingent, including, specifically, but without limitation, the Avoidance Actions.

**"Claim"** shall have the meaning set out in §101 of the Bankruptcy Code.

"**Claim Register**" shall mean the Claim Register as maintained by the Court as to the Debtor.

"**Claimant**" or "**Creditor**" means the holder of a Claim.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code, as it may be continued from time to time, on confirmation of the Plan.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

"**Contested**," when used with respect to a Claim, means a Claim against the Debtor (i) that is listed in the Debtor's Schedules as disputed, contingent or unliquidated regardless of whether a proof of claim has been filed or not; (ii) that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (iii) that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been or may be filed. Notwithstanding the foregoing, after the Objection Deadline, including any extensions thereto, only Claims to which an Objection has been filed shall be deemed Contested Claims with respect to claims for which a proof of claim has been filed.

"**Court**" means the United States Bankruptcy Court for the Southern District of Texas, Laredo Division.

"**Corazon**" means the 8,673.68 acres, more or less, located in Webb County, Texas and more particularly described on the Howland Map attached as **Exhibit B** hereto.

"**Debtor**" means G.B.G. Ranch, Ltd.

"**Disclosure Statement**" means the disclosure statement filed by the Debtor as amended from time to time.

"**Effective Date**" means the first Business Day after the expiration of the thirtieth (30th) day after the Confirmation Order becomes a Final Order.

"**Equity Interest**" means the interest represented by an "equity security," as defined in §101 of the Bankruptcy Code, including all partnership interests in the Debtor.

"**Executory Contracts**" means all unexpired leases and executory contracts as such terms are used within § 365 of the Bankruptcy Code to which the Debtor was a party as of the Petition Date.

"**Fee Application**" means an application of a Professional Person under §§ 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

"**Fee Claim**" means a Claim under §§ 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

"**Final Order**" means (i) an order as to which the time to appeal, petition for certiorari or motion for re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment has expired and as to which no appeal, petition for certiorari or other proceedings for re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending, or (ii) in the event that an appeal, writ of certiorari, re-argument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which re-argument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and the time to take any further appeal, petition for certiorari or move for re-argument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect   to such order.

"**GBG Ranch Trust**" shall mean the Texas domestic trust of maximum duration the trustee for which shall be an institution approved by the Court. The form of the GBG Trust shall be incorporated into the Plan as a Plan Document contemporaneously with confirmation of the Plan.  The proposed for of the GBG Ranch Trust is attached as **Exhibit D** to this Plan.

"**General Unsecured Claim**" means any Claim against the Debtor that is not a Priority Claim, Secured Claim, or an Administrative Expense.

"**Hill**" means the 5,297.32 acres, more or less, located in Webb County, Texas and more particularly described on the Howland Survey Map attached as **Exhibit A** hereto.

"**Hill Fee Lands**" means Tracts 1, 2, 3, 4, 6, 7, 8, and 9 identified on the Howland Survey Map attached as **Exhibit A** hereto.

"**Hill Tract 5**" means tract 5 as identified on the Howland Survey Map attached as **Exhibit A** hereto which tract is mineral classified land.

"**Liens**" means valid and enforceable liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

"**Master Lease**" means that certain Grazing and Hunting Lease agreement dated 2nd day of August executed by and between GBG Land and Cattle Co., Ltd. and GBG Cattle & Hunting, LLC as assigned to GBG Ranch, Ltd.

"**Objection Deadline**" means the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims.

"**Oilton**" means the 6,709.81 acres, more or less, located in Webb County, Texas and more particularly identified on the Map attached as **Exhibit C** hereto.

"**Plan Assets**" means the Hill Fee Tracts, all personal property owned by the Debtor, all intercompany accounts receivable owing to the Debtor, and all third party accounts receivable owing to the Debtor.

"**Petition Date**" means July 8, 2014.

"**Plan**" means this Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

"**Plan Documents**" means the documents that aid in effectuating the Plan as specifically identified as such herein, which will be substantially in the form filed by the Debtor with the Bankruptcy Court prior to the conclusion of the Confirmation Hearing.

"**Plan Participants**" means the Debtor, its directors, officers, partners, employees and advising professionals as of and after the Confirmation Date.

"**Priority Claim**" means any Claim (other than an Administrative Expense) to the extent entitled to priority in payment under § 507(a) of the Bankruptcy Code.

"**Priority Tax Claim**" means a Priority Claim of a governmental unit of the kind specified in §507(a)(8) of the Bankruptcy Code.

"**Professional Person**" means a person retained or to be compensated pursuant to §§ 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code.
"**Proponent**" means the Debtor.

"**Pro Rata Share**" means the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Contested Claims, but not including Disallowed Claims.

"**Quita Wind**" means Quita Wind Energy Company, LLC, a Texas limited liability

company.

"**Ranches**" means the Hill, the Corazon and the Oilton, collectively.

"**Representatives**" means any officer, director, financial advisor, attorney, law firm, accounting firm, financial advising firm, and other Professional Person.

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and Statements have been or may be supplemented or amended.

"**Secured Claim**" means a Claim secured by a lien or right of setoff allowable under 11 U.S.C. § 553 on property of the Debtor, which lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 case, but only to the extent of the value of the Collateral that secures payment of such Claim.

"**Taxing Authority**" means the holder of an Allowed Priority Tax Claim.

"**Tax Liens**" means any statutory liens securing any Allowed Claim of any Taxing Authority.

"**Trust Assets**" means the Corazon, Oilton and Hill Tract 5 together with all rights and privileges appurtenant thereto.

"**Vested Property**" means all property vested in the Reorganized Debtor pursuant to Article 5.2 of the Plan.

"**Voting Record Date**" means that date set by the Bankruptcy Court for determining the holders of claims and interests entitled to vote to accept or reject the Plan.

"**Wind Lease**" means the Corrected Wind Lease and Easement Agreement dated the 12th day of January, 2007, executed by and between GBG Ranch and Quita Wind.

"**Wind Stipulation**" means the Stipulation Regarding Correction Wind Lease and Easement Agreement as Exhibit A to the Emergency Motion To Approve Stipulation Regarding Correction Wind Lease And Easement Agreement With Quita Wind Energy Co., LLC [Docket No. 148].

**2.      Interpretation**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived or modified from time to time.   The headings and table of contents in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan   Words denoting the singular number shall include the plural number and vice versa   and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

**3.      Application of Definitions and Rules of Construction Contained in the Bankruptcy Code**

Words and terms defined in §101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan.   The rules of construction contained in §102 of the Bankruptcy Code shall apply to the construction of the Plan.

**4.      Other Terms**

The words "herein," "hereof," "hereto," "hereunder" and other of similar import refer to the Plan as a whole and not to any particular section subsection or clause contained in the Plan.   A term used herein that is not defined herein shall have the meaning ascribed to that term if any, in the Bankruptcy Code.

**5.      Integration Clause**

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, Creditors, Equity Interests and the parties-in-interest upon the matters herein.   Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

**6.      Plan Documents**

The Plan Documents are incorporated into and are a part of the Plan as if set forth in full herein, including, but not limited to the GBG Ranch Trust.

## ARTICLE 3
## THE GBG RANCH TRUST

The GBG Ranch Trust shall be a Texas domestic Trust of maximum duration permitted under applicable Texas law. The trustee of the GBG Ranch Trust shall be an institutional trustee to be identified by the Debtor prior to confirmation and prior to the

settlement of the GBG Ranch Trust. The designation of the institutional trustee and that institution's acceptance of the role as trustee shall be subject to the approval of the Bankruptcy Court. Upon the conveyance of the Oilton and Corazon Ranches and the Hill Ranch Tract 5 (mineral classified land) into the GBG Ranch Trust, the Wind Lease shall be terminated as to the real estate so transferred. In consideration of the termination and cancellation of the Wind Lease, the Wind Revenue Beneficiaries shall be entitled to receive payment of the revenue generated from the production of wind energy on the Corazon Ranch, the Oilton Ranch and Hill Tract 5, as applicable, in the proportion of the membership interest held in Quita Wind immediately prior to the termination and cancelation of the Wind Lease.  In addition to the standard trust provisions, the GBG Ranch Trust shall further provide, on the condition that there is actual wind energy generation in paying quantities or the subject land is under contract for same, that upon the determination under the laws of the State of Texas that wind rights are severable from surface rights, that the Trustee shall, as soon thereafter as practical, sever the wind rights on the Oilton Ranch, the Corazon Ranch and the Hill Ranch Tract 5 and distribute those severed rights to the Wind Revenue Beneficiaries in proportion to their beneficial interest. In the event that wind rights are not determined to be severable from the surface estate during the life of the GBG Ranch Trust, then upon the earlier of the termination of the Trust or 30 years from the settlement date, the rights and privileges of the Wind Revenue Beneficiaries shall terminate. Upon the earlier of the severance of the wind rights or the termination of the beneficial interest of the Wind Revenue Beneficiaries, the trustee shall be permitted to sell the Trust assets that are not otherwise burdened by an operating wind lease. In the event that a contract for the development and exploitation of wind energy is not entered into for Hill Tract or the Corazon within 15 years of the settlement of the GBG Trust, the Trustee shall thereafter be authorized to sell the said tract, ranch or portion thereof in the sole discretion of the trustee of the GBG Ranch Trust.

### i.  The Wind Revenue Beneficiaries

In connection with the creation of the GBG Ranch Trust, the Debtor, as settlor, will cause the conveyance of the Corazon Ranch, Oilton Ranch and Tract 5 of the Hill Ranch into the GBG Ranch Trust.  In advance of the conveyance and in accordance with the Wind Stipulation, the Debtor and Quita Wind will cancel the Wind Lease and Quita Wind will be terminated. In consideration for the cancellation of the Wind Lease, the members of Quita Wind will be designated as the Wind Revenue Beneficiaries holding a beneficial interest equal to their current ownership in Quita Wind in all revenue generated from wind energy production to consist of the royalty payable under any wind, revenue from wind energy generation, storage, transportation and all revenues associated with wind energy operations, excluding the Surface Revenue, *infra.* (collectively the "Wind Revenue") on the Corazon Ranch, the Oilton Ranch and Tract 5 of the Hill Ranch net of the costs of administration of the GBG Ranch Trust. In addition, the Wind Revenue Beneficiaries will receive the Wind Revenue in proportion to their ownership interest in Quita Wind immediately preceding the date of the transfer of the interest into the trust.   It is intended that the Wind Revenue Beneficiaries shall receive their pro rata share of all Wind Revenue based upon their relative ownership interest in Quita Wind immediately

preceding the funding of the GBG Ranch Trust. The grant of the beneficial interests to the Quita Wind membership as Wind Revenue Beneficiaries together with the allocation of 30% of the appraised value of each of the Hill Fee Tracts[3] upon the closing of a sale of any such tract, is in full and final satisfaction of any and all claims, including rejection damage claims which may be asserted by Quita Wind or any individual member of Quita Wind.

### ii.  The Surface Estate Beneficiaries

Notwithstanding anything to the contrary in any existing sublease agreement for the production of wind energy on the Oilton Ranch, and as consideration for the grant of the Wind Revenue Beneficiary status to the presently existing members of Quita Wind, all revenue generated from the habitation, destruction, consumption, production, or other use of the surface, damages payable for the placement of wind turbines, power lines, power stations, roads and any infrastructure for the production of wind energy, shall be payable to the Surface Estate Beneficiaries ("Surface Revenue") and not the Wind Revenue Beneficiaries.   In addition to the Surface Revenue, the Surface Estate Beneficiaries shall also receive the net revenue, after payment of applicable administrative costs and expenses, from caliche sales, water sales, grazing lease revenue, hunting lease revenue, all oil, gas and other subsurface minerals related revenue and surface damages, royalty revenue from all subsurface hydrocarbon revenue from the mineral classified land (Hill Tract 5 and Corazon South), and all other revenue of any kind generated from the Corazon Ranch and/or the Oilton Ranch oil and/or Tract 5 of the Hill Ranch not expressly reserved to the Wind Revenue Beneficiaries.

### ARTICLE 4
### CLASSIFICATION AND IMPAIRMENT OF CLAIMS AND EQUITY INTERESTS

**1.   Classification**

As provided in 11 U.S.C. § 1123(a), Administrative Expense Claims shall not be classified for purposes of voting or receiving distributions under the Plan. The Allowed Claims against, and Allowed Equity Interests in, the Debtor are classified as set forth in this Article III. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest fits within the description of such Class, and is in such other and different Class or Classes to the extent that the remainder of such Claim or Equity Interest fits within the description of such other Class or Classes. Any dispute with respect to classification of Claims or Equity Interests or impairment shall be resolved by the Bankruptcy Court upon motion of the Claimant or Equity Interest holder affected thereby, with notice to the Debtor. This Plan shall only provide distributions to Allowed Claims; nothing within this Plan shall provide for the Allowance of any Claim.  The Allowed Claims and Equity Interests are classified as follows:

---

3    As determined by the Southwest Appraisal Group Appraisal dated April 9, 2014, as supplemented.

**Administrative Claims**

    **Professional Claims**

**Class 1:**    **Priority Tax Claims**

**Class 2:**    **General Unsecured Third Party Claims**

**Class 3:**    **General Unsecured Claims of Affiliated Parties**

**Class 4:**    **Equity Interests**

**2.**    **Impaired Classes of Claims and Equity Interests**

No classes are impaired under the Plan.

All classes are unimpaired under the Plan. As unimpaired Classes, all classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

**3.**    **Impairment and Classification Controversies**

If a controversy arises as to whether any Claim or Equity Interest or any class of Claims or class of Equity Interests is impaired under the Plan or is classified incorrectly, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy at the Confirmation Hearing.

**4.**    **Class Acceptance Requirement**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the holders of Allowed Claims in such class that have voted on the Plan.

**5.**    **Cramdown**

If any class of Claims or Equity Interests shall fail to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code.   The Proponent will seek confirmation of the Plan pursuant to § 1129(b) with respect to any non-accepting class.

**6.**    **Disallowance of Claims Subject To Avoidance Actions**

Any otherwise Allowed Claim, subject to Avoidance Actions as described in the Disclosure Statement under Section 547 of the Bankruptcy Code shall be disallowed pursuant to § 502(d) of the Bankruptcy Code until such time as the avoidable transfers are

returned to the Debtor's estate and such holder of a claim subject to an avoidable preference shall not be entitled to vote to accept or reject this Plan.

**7.     Elimination of Classes**

Any impaired class that is not occupied as of the date of the Confirmation Hearing by an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily allowed pursuant to Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purposes of voting on acceptance or rejection of the Plan and determining whether the Plan has been accepted by such class pursuant to 11 U.S.C. § 1129.

**ARTICLE 5**
**PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN**

The classes of Claims against and Equity Interests in the Debtor shall be treated under the Plan as follows:

**1.     Administrative Claims:**

**a.     General:**   Subject to the bar date provisions herein, unless otherwise agreed to by the parties, each holder of an Allowed Administrative Claim shall receive Cash equal to the unpaid portion of such Allowed Administrative Claim on the later of (a) the Effective Date, (b) the Allowance Date, or (c) such date as is mutually agreed upon by the Debtor and the holder of such Claim.

**b.     Payment of Statutory Fees:**   All fees payable pursuant to 28 U.S.C. § 1930 shall be paid in Cash equal to the amount of such Administrative Claim when due.

**2.     Bar Date for Administrative Claims:**

**a.     General Provisions:** Except as otherwise provided in this Article 5, requests for payment of Administrative Claims must be included within a motion or application and filed no later than forty-five (45) days after the Effective Date or by such earlier deadline governing a particular Administrative Claim contained in an order of the Bankruptcy Court entered before the Effective Date. Holders of Administrative Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the holders of any Claims for federal, state or local taxes) that are required to file a request for payment of such Claims and that do not file such requests by the applicable bar date specified in this section shall be forever barred from asserting such Claims against the Debtor or any of its respective property. Requests for payments of Administrative Claims included within a proof of claim are of no force and effect,   and   are disallowed   in   their entirety   as   of the   Confirmation   Date   unless   such Administrative Claim is subsequently filed in a timely fashion as provided herein.

**b.      Professionals:**    All Professional Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), and 1103 of the   Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Debtor's Bankruptcy Case) shall file and serve on the Debtor an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and the professionals to whose application the objections are addressed no later than twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing. Any fees of Professional Persons and reimbursements or expenses incurred by the Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court.

**c.      Tax Claims:** All requests for payment of Administrative Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, which accrued or was assessed within the period from and including the Petition Date through and including the Effective Date ("**Post-Petition Tax Claims**") and for  which no bar date has otherwise been previously established, must be filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) ninety (90) days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period. Any holder of any Post-Petition Tax Claim that is required to file a request for payment of such taxes and does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Reorganized Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date. To the extent that the holder of a Post-Petition Tax Claim holds a Lien to secure its Claim under applicable state law, the holder of such Claim shall retain its Lien. Post-Petition Tax Claims will be paid by the Reorganized Debtor as set forth in the Plan.

**d.      Ordinary Course Liabilities:** The Reorganized Debtor shall pay each liability incurred in the Ordinary Course of Business pursuant to the payment terms and conditions of the particular transaction giving rise to the Ordinary Course of Business Claim.   Holders of any Ordinary Course of Business Claim will not be required to file or serve any request for payment of the Claim in the Ordinary of Course of Business.

**e.      Impairment & Voting:**   Administrative claims are not a true class and are neither impaired nor unimpaired. Acceptance of the Plan from such Claimants will not be solicited.

**3.      Classification of Claims**

**Class 1:       Priority and/or secured claims of Taxing Authorities:**

**A.    United Independent School District (UISD)**
The UISD claim is a priority and/or secured claim for ad valorem taxes in the amount of $18,548.01.

**B.    Webb County Independent School District (WCISD)**
The WCISD claim is a priority and/or secured claim for ad valorem taxes in the amount of $4,185.93.

**C.    Webb County**
The Webb County claim is a priority and/or secured claim for ad valorem taxes in the amount of $8,680.86.

Treatment:    The claims for ad valorem taxes will be paid in full on the Effective Date.

Funding:    The Reorganized Debtor will pay the class 1 claims from cash on hand on the Effective Date.

Impairment and Voting:    Class 1 is unimpaired.    Acceptance of this Plan from the holders of Class 1 claims will not be solicited.

Additional Terms:    The state tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case.   The liens continue to be enforceable against the property of the Debtor to the same extent, priority, and validity such liens were entitled to as of the Petition Date.   Notwithstanding anything else to the contrary in the Plan or the Confirmation Order, these provisions will govern the treatment of the claims of the Ad Valorem Taxing Entities: (1) nothing provided in the Plan or the Confirmation Order shall affect or impair any setoff rights of  Ad Valorem Taxing Entities: (2) nothing provided in the Plan or the Confirmation Order shall affect or impair any rights of the Ad Valorem Taxing Entities to pursue any non-debtor third parties for tax debts or claims; (3) nothing provided in the Plan or the Confirmation Order shall be construed to preclude the payment   of interest on the Ad Valorem Taxing Entities's administrative expense tax claims; (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of Ad Valorem Taxing Entities, the interest rate shall be 12% per annum; and (5) the Ad Valorem Taxing Entities shall retain its liens   until paid in full.   The provisions of the Plan and Confirmation Order supplement these terms where not inconsistent herewith.

A failure by the Debtor or Reorganized Debtor to make a payment to a priority or secured tax creditor pursuant to the terms of the Plan shall be an Event of Default. If the Debtor or Reorganized Debtor fail to cure an Event of Default as to payments to the Ad Valorem Taxing Entities within ten (10) days after service of a written notice of default from Ad Valorem Taxing Entities, then Ad Valorem Taxing Entities may (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court.

**Class 2:        Allowed General Unsecured Claims of Third Parties**

This Class shall consist of all Allowed General Unsecured Claims other than the claims of entities related to the Debtor.

<u>Total of Claims:</u>        The estimated total of the Class 2 claims is $52,835.45.

<u>Treatment:</u>        Each holder of an Allowed General Unsecured Claim shall be paid in full on the Effective Date.

<u>Funding:</u>        The Reorganized Debtor will pay the class 2 claims from cash on hand on the Effective Date.

<u>Impairment and Voting:</u>        Class 2 is unimpaired.   Acceptance of this Plan from the holders of Class 2 claims will not be solicited.

**Class 3:        General Unsecured Claims of Affiliated Entities**

This Class shall consist of all General Unsecured Claims of Affiliated Entities related to the Debtor. These claims are contingent, disputed and unliquidated.

<u>Total of Claims:</u>        The undisputed claims of affiliated entities totals $801,070.19 [4] .   The balance of the Class 3 claims are contingent, disputed and unliquidated. Therefore the total of Class 3 claims is unknown.

<u>Treatment:</u>        The Class 3 claims will be subject to the Provisions Regarding Distributions Under the Plan and the Treatment of Disputed, Contingent, and Unliquidated Claims provided for in Article IX,

---

[4]    These claims consist of the debt GBG Minerals in the amount of $240,000.00 and the debt to BFM in the amount of $561,070.19 but is subject to an offset against the $1,270,000.00 claim of the Debtor against BFM.

Section B of this Disclosure Statement.   Each holder of an Allowed General Unsecured Claim shall be paid in full within thirty (30) business days following the day on which such Claim becomes and Allowed Claim pursuant to a Final Order.

<u>Funding:</u>   The Reorganized Debtor will pay all allowed class 3 claims from cash on hand on the later of the Effective Date or the entry of a final non-appealable order allowing the claim.

<u>Impairment and Voting:</u>   Class 3 is unimpaired.   Acceptance of this Plan from the holders of Class 3 claims will not be solicited.

**Class 4:   Prepetition Equity Interests**

This Class shall consist of all Prepetition Equity Interests.

<u>Treatment</u>:   Prepetition Equity Interests in the Debtor will be deemed Allowed Equity Interests.

<u>Funding</u>:   After payment of all allowed claims superior to the Class 4 interests, conveyance of the Oilton Ranch, Corazon Ranch and Tract 5 of the Hill Ranch to the GBG Ranch Trust, liquidation of the remaining Hill Fee Lands, liquidation of the other assets of the Estate, and after payment of all allowed administrative expenses (including attorneys' fees and U.S. Trustee's fees), the remaining cash on hand shall be distributed to the prepetition equity interest holder in the Debtor in proportion to their ownership interest immediately preceding the Petition Date.

<u>Impairment and Voting</u>:   Class 4 is unimpaired.   Acceptance of this Plan from the holders of Class 4 claims will not be solicited.

**ARTICLE 6**
**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN**

**1.   Conditions Precedent to Confirmation of the Plan**

Confirmation of the Plan is subject, in addition to the requirements provided in §1129 of the Bankruptcy Code, to satisfaction of the following conditions precedent:

**a.**   the establishment and settlement of the GBG Ranch Trust by the Debtor;
**b.**   the termination of the Wind Lease; and
**c.**   all other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

### 2.      Vesting of Plan Assets in the Reorganized Debtor

**a.**      On the Effective Date of the Plan, the Plan Assets shall vest in the Reorganized Debtor free and clear of lines, claims and encumbrances, except as otherwise provided in the Plan.

**b.**      On the Effective Date of the Plan, the Trust Assets shall vest in the GBG Ranch Trust free and clear of lines, claims and encumbrances, except as otherwise provided in the Plan.

**c.**      From and after the Effective Date, the Reorganized Debtor will liquidate the Plan Assets which shall be used to satisfy the Allowed Administrative Claims (including reasonable and necessary professional fees), Allowed Claims and Allowed Equity Interests.

**d.**      The Reorganize Debtor shall be authorized and permitted to liquidate all personal property and all third party accounts receivable without Court approval.  All sales of the remaining Hill Fee Tracts, if any, shall be sold subject to approval by the Court.

e.      The Reorganized Debtor will be responsible for paying any quarterly U.S. Trustee fees that accrue after the Effective Date.

**f.**      After the Effective Date, the affairs of the Reorganized Debtor and all of the Plan Assets shall be liquidated under the direction and control of the Reorganized Debtor.

**g.**      No Cause of Action is released by confirmation of this Plan, and confirmation of this Plan shall not have any *res judicata* or collateral estoppel effect on the Reorganized Debtor's prosecution of any Causes of Action.

**h.**      The Reorganized Debtor shall not be subject to any counterclaims except as asserted in the Adversary as of the Effective Date.

### 3.      Settlement of the GBG Ranch Trust, Winding Up and Termination

**a.**      Notwithstanding the organizational documents governing the operation of the Debtor, the Reorganized Debtor shall be authorized and directed to convey the Trust Assets to the GBG Ranch Trust on the Effective Date.

**b.**      Upon the liquidation of the of the Plan Assets, the settlement of the GBG Ranch Trust, payment of the Allowed Claims, payment of all administrative expenses, including professional fees, and distribution of the remaining cash to the Equity Interests based upon their ownership interest in the Debtor as of the Petition Date, the Reorganized Debtor shall be wound up and terminated in accordance with Texas law.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION OF THE PLAN

**1.     Settlement and Releases**

Pursuant to the terms and conditions of the Wind Stipulation, all of the claims and causes of action by and between the Debtor and Quita Wind are deemed settled, compromised and satisfied for all purposes.   In accordance with and furtherance of the Wind Stipulation and as a material component of the Plan and the GBG Ranch Trust, after confirmation of the Plan and the creation of the GBG Ranch Trust, Quita Wind will convey all of its assets into the GBG Ranch Trust and be wound up and terminated in accordance with Texas law.

**2.     Continued Corporate Existence and Cash Flow from Future Sales of the Reorganized Debtor**

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a limited partnership, with all of the powers of a limited partnership under applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to its certificate of limited partnership and partnership agreement or other organizational documents in effect before the Effective Date, as such documents are amended by or pursuant to the Plan, until the Plan Assets are fully liquidated, the Trust Assets are conveyed to the GBG Ranch Trust, all allowed claims are paid, all post confirmation obligations of the Reorganized Debtor are paid, and all then remaining funds on deposit with the Reorganized Debtor are distributed to the Equity Interests in accordance with their ownership interest as of the Petition Date.

**3.     Default**

A failure by the Reorganized Debtor to make a payment to a Taxing Authority in accordance with the terms of the Plan shall be an Event of Default.   If the Reorganized Debtor fails to cure an Event of Default as to such payments within thirty (30) days after service of written notice of default served on the Reorganized Debtor with a copy to counsel for the Reorganized Debtor, then such tax creditor may (a) enforce the entire amount of its claim, (b) exercise any and all rights and remedies under applicable non--bankruptcy law, and (c) seek such relief as may be appropriate in this Court.

**4.     Assignment of Causes of Action**

On the Effective Date, all rights and Causes of Action of the Debtor, including claims under §§ 502, 542, 544, 545, 546, 548, 550, and 553 of the Bankruptcy Code, preference claims under § 547 of the Bankruptcy Code, fraudulent transfer claims under § 548 of the Bankruptcy Code, and all other claims and causes of action of the Debtor's estate against any Person as of the Confirmation Date shall be preserved and transferred and assigned to the Reorganized Debtor. On the Effective Date, the Reorganized Debtor

shall be authorized and shall have the power to bring any and all such Causes of Action including Avoidance Actions for payments. The Reorganized Debtor shall have the power and authority to continue the litigation in Adversary 14-05006.

All recoveries, if any, received from or in respect of the causes of action (whether by settlement, judgment or otherwise) shall become and be property of the Reorganized Debtor to be distributed in accordance with the Plan. To the extent permitted under law, all rights under § 363(h) of the Bankruptcy Code are also preserved for the benefit of the Debtor's estate, and the Reorganized Debtor shall have the right to exercise those rights subject to Bankruptcy Court Approval. The Reorganized Debtor may prosecute, settle, or dismiss rights, claims, or causes of action as the Reorganized Debtor sees fit and all proceeds there from shall be the property of the Reorganized Debtor subject to distribution in accordance with the terms and conditions of this Plan. The Debtor, its general partner, officers, attorneys, and other professional advisors shall have no liability to any entity or parties claiming through the Debtor for pursuing or not pursuing any such rights, claims, or causes of action vested in the Reorganized Debtor pursuant to this Plan.

## ARTICLE 8
## PROVISIONS FOR MANAGEMENT

### 1.      Partnership Authority

All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan. The Confirmation Order shall include provisions directing the Reorganized Debtor to execute such documents necessary to effectuate the Plan, including the conveyance of the Trust Assets into the GBG Ranch Trust, which documents shall be binding on the Debtor, the Reorganized Debtor, the Debtor's creditors and all of the holders of Debtor's Equity Interests.

### 2.      Professional Fees

In accordance with the Orders Authorizing Employment of Attorneys at Docket No. 20, entered by the Court on July 20, 2014, Docket No. 25 on August 26, 2014, and Docket No. 47 entered by the Court on September 16, 2014, respectively, all professional fees for counsel for the Reorganized Debtor shall be paid, subject to court approval, with funds paid by the Reorganized Debtor. All   Professional   Persons requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), and 1103 of the Bankruptcy Code for services rendered before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Debtor's Bankruptcy Case) shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses no later than   sixty (60) days after the Effective Date. Objections to applications of professionals for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and the professionals   to   whose application   the   objections are addressed no later than

twenty-one (21) days after the date the application is filed, or the Bankruptcy Court may enter an order authorizing the fees without a hearing.   Any professional fees and reimbursements or expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court.

### 3.    General Partner

If the Plan is confirmed, subject to the approval of the Bankruptcy Court under Bankruptcy Code § 1129(a)(5), the present General Partner as identified in the disclosure statement shall continue in its present capacities as manager of the Reorganized Debtor after the Confirmation Date, through the winding up and termination of the Reorganized Debtor.

## ARTICLE 9
## CERTIFICATE OF PARTNERSHIP AND PARTNERSHIP AGREEMENT OF THE DEBTOR/RESTRICTIONS ON TRANSFER OF INTERESTS

### Amendments to Certificate of Partnership and Partnership Agreement

The Confirmation Order shall provide authorization pursuant to the applicable limited partnership laws for the filing by the Reorganized Debtor of amended governing documents to provide that:

**a.**    the issued and outstanding equity of the Operating Debtor shall be canceled, annulled and extinguished upon the winding up and termination of the Reorganized Debtor in accordance with the terms of the Plan; and

**b.**    such other changes as necessary to effectuate other provisions of the Plan and §1123(a)(6) of the Bankruptcy Code.

## ARTICLE 10
## PROVISIONS GOVERNING DISTRIBUTIONS

### 1.    Distributions To Be Pro Rata Within Class

The Debtor anticipates that all Allowed Claims will be paid in full; however, if any distribution constituting a partial payment to a class of Allowed Claims is made it will be made on a Pro Rata Share to the holders of Allowed Claims in such class.

### 2.    Federal Tax Identification Number

The Reorganized Debtor may suspend distribution to any Creditor that has not provided the Reorganized Debtor with its Federal Tax Identification number or social security number, as the case may be.

### 3.      Means of Cash Payment

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a domestic bank, or, at the Reorganized Debtor's option, as the case may be, by wire transfer from a domestic bank.

### 4.      Delivery of Distributions

Subject to Bankruptcy Rule 9010 and the provisions of the Plan, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such a holder if no Proof of Claim or proof of Equity Interest is filed or if the Reorganized Debtor has been notified in writing of a change of address), except as provided below. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Reorganized Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtor until such distributions are claimed. All claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall revert to the Reorganized Debtor, any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.   Any distributions pursuant to the Plan, including Cash, interest or other amounts earned thereon, that are unclaimed for a period of one (1) year after distribution thereof shall be re-vested in the Reorganized Debtor and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred. Failure to claim, cash or negotiate any distribution within one (1) year of such distribution shall relieve the Reorganized Debtor of the obligation to make any further distributions to the holder of the Claim to whom the distribution was made.

### 5.      Time Bar to Cash Payments

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six (6) months after the date of issuance thereof. Requests for re-issuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date, or (b) ninety (90) days after the date of re-issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred.

### 6.      No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to (a) any Claim to the extent it is a Contested Claim (whether by pending claims litigation or under Adversary 14-05006) unless and until such Contested

Claim becomes an Allowed Claim; (b) any Equity Interest to the extent it is contested unless and until such Equity Interest becomes an Allowed Equity Interest; (c) Claimants who are defendants in Avoidance Actions and other parties subject to the application of §502(d) of the Bankruptcy Code, (d) reclamation claims pursuant to § 546(c)(2)(A) of the Bankruptcy Code which are not Allowed Claims.

## ARTICLE 11
## PROCEDURES FOR RESOLVING AND TREATING
## <u>CONTESTED AND DISPUTED CLAIMS UNDER THE PLAN</u>

### 1.    Objection Deadline

As soon as practicable, but in no event later than forty-five (45) days after the Effective Date, unless extended by order of the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.

### 2.    Prosecution of Objections

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all objections to claims may be made by the Reorganized Debtor.

### 3.    Distributions upon Allowance of Contested Claims Entitled to Payment in Full in One Payment

The holder of a Claim entitled to payment in full on one specific payment date, which Claim is a Contested Claim on such payment date, but which Claim subsequently becomes an Allowed Claim, shall receive payment of its Allowed Claim within thirty (30) Business Days following the date on which such Claim becomes an Allowed Claim pursuant to a Final Order.

### 4.    Distributions upon Allowance of Contested Claims Entitled to Payment in Full in Installment Payments

The holder of a Claim entitled to payment in installments, which Claim is a Contested Claim on the initial or any later date the installment would otherwise be made, but which Claim subsequently becomes an Allowed Claim, shall receive the amount of any missed installments on the first date payments to other holders of Claims in the same Class are scheduled to be made that arises after the date on which such Claim becomes an Allowed Claim by Final Order. If such Claim does not become an Allowed Claim until after all the other Claims in the Class have received their total distributions as authorized under the Plan, then the holder thereof shall receive payment of its Allowed Claim within ten (10) Business Days following the date on which such Claim becomes an Allowed Claim pursuant to a Final Order.

**5.      Objections to and Resolution of Contested Administrative Claims and Contested Claims**

The Bankruptcy Court will set an Administrative Bar Date for all Administrative Claims except claims for §327 professionals. After the Confirmation Date, the Reorganized Debtor shall have the right to maintain, make and file objections to Administrative Claims and objections to Claims. All objections shall be litigated to Final Order;  provided, however, that the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw all objections, other than applications for allowance of compensation and reimbursement of expenses under §§ 330 and 503 of the Bankruptcy Code, without approval of the Bankruptcy Court.

**ARTICLE 12**
**PROVISIONS GOVERNING EXECUTORY**
**CONTRACTS UNDER THE PLAN**

**1.      Executory Contracts**

The Plan constitutes a motion by the Debtor to reject, as of the Confirmation Date, all Executory Contracts, including the Wind Lease and the Master Lease, and excluding the Torrecillos Wind Sublease.

**Quita Wind Lease**

The grant of the beneficial interests to the Quita Wind membership as Wind Revenue Beneficiaries together with the allocation of 30% of the appraised value of each of the Hill Fee Tracts[5] upon the closing of a sale of any such tract, is in full and final satisfaction of any and all claims, including rejection damage claims which may be asserted by Quita Wind or any individual member of Quita Wind.

**Master Lease**

As of the Petition date, C&H was in payment default under the Master Lease and was indebted to the Debtor in the amount of $494,386.60 in unpaid grazing and hunting fees.   Additional obligations for the lease of the Ranches for 2014-2015 became due and payable on November 1, 2014.   Since the petition date, the Debtor has notified C&H of the payment default under the Master Lease and demanded payment of the past due payments.  The Master Lease will be rejected and terminated for non-payment.  The Debtor is aware that C&H is unable to pay the full amount of the past due sum owing, but believes that the debt owing by C&H may be substantially satisfied through cash on hand and the conveyance of the personal property owned by C&H to the Debtor for liquidation in full satisfaction of the obligations of C&H to the Debtor.

---

5      As determined by the Southwest Appraisal Group Appraisal dated April 9, 2014, as supplemented.

**Insurance Policies**

Provided, however, all insurance policies and indemnity agreements in which the Debtor or the Debtor's property are insured and/or indemnified against loss (whether for potential liability or for costs of defense) are hereby assumed and assigned to the Reorganized Debtor pending the settlement of the GBG Ranch Trust at which time the insurance policies applicable to the Trust Assets will be assigned to the GBG Ranch Trust.

### 2.    Bar to Rejection Damages

If the rejection of an Executory Contract by the Debtor results in damages to the other party or parties to such Lease, a Claim for such damages, if not heretofore evidenced by a filed Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor, its respective properties or its agents, successors or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor and counsel for the Debtor on or before thirty (30) days after the Confirmation Date.   Notwithstanding the foregoing, to the extent that Quita Wind and/or any member thereof is entitled to rejection damages, said damages are deemed fully and satisfied under the terms and conditions of the Wind Stipulation.

### ARTICLE 13
### RETENTION OF JURISDICTION

### 1.    Scope of Jurisdiction

Pursuant to §§1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Chapter 11 case and the Plan pursuant to, and for the purposes of §§105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes to:

**a.**    hear and determine pending applications for the assumption or rejection   of Executory Contracts and the allowance of Claims resulting therefrom;

**b.**    hear and determine any and all adversary proceedings, applications and contested matters, including any remands of appeals;

**c**.    hear and determine any and all applications for the sale of the Hill Fee Tracts;

**d.**    ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

**e.**    hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation or payment of any Claim or

Equity Interest;

**f.**     enter and implement such orders as may be appropriate in the event the Confirmation Order   is for any reason stayed, revoked, modified, reversed, or vacated;

**g.**     enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate or enforce the Plan and the transactions contemplated thereunder;

**h.**     consider any modification of the Plan pursuant to §1127 of the Bankruptcy Code, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**i.**     hear and determine all Fee Applications and Fee Claims;

**j.**     hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation or enforcement of the Plan;

**k.**     enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order;

**l.**     recover all assets of the Debtor and property of the estate, wherever located;

**m.**     hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

**n.**     hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

**o.**     enter a final decree closing the Chapter 11 case.

**2.     Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 case, including the matters set forth in Section 14.1 of the Plan, this Article 13 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE 14
## EFFECT OF CONFIRMATION OF THE PLAN

### 1.      Discharge of Reorganized Debtor

The rights afforded in the Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever against the Reorganized Debtor and any of its property, including the Plan Assets; and, except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by §1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, and all debts of the kind specified in §§502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim  based upon such debt is filed or deemed filed under §501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under §502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. As provided in §524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a claim discharged, and operates as an injunction against the prosecution of any action against the Debtor, or its property, including the Plan Assets and the Trust Assets, to the extent it relates to a Claim discharged.

### 2.      Exculpation and Release of Debtor and Professionals

Except as to gross negligence or fraud, any and all Claims, liabilities, causes of action, rights, damages, costs and obligations held by any party with respect to the Debtor, or this Bankruptcy Case against the Debtor, or any of its respective present or former members, general partner, limited partners, officers, directors, employees, attorneys, advisors or other professionals, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, existing   prior to the Effective Date, or in any manner related to the administration of the Case, or the formulation, negotiation, prosecution or implementation of the Plan, shall be deemed fully waived, barred, released and discharged in all respects.   Nothing in this Article 14, paragraph 2 shall serve to release any defendant or counter-defendant from any claim or liability to the Debtor, including those claims asserted in the Adversary and/or which may be asserted by way of offset for any proof of claim filed.

### 3.      Certain Activities Enjoined

Except as expressly provided herein, at all times on and after the Effective Date, all Persons who have been, are, or maybe holders of Claims against or Equity Interests in the Debtor arising prior to the Effective Date, shall be enjoined from taking any of the following actions against or affecting the Debtor, its estate, or its property, including the

Plan Assets and the Trust Assets, with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under the Plan):

**a.**     commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtor, its estate, or its property, including the Plan Assets and Trust Assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which shall be deemed to be withdrawn or dismissed with prejudice);

**b.**     enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtor, its estate, or its property, including the Plan Assets and Trust Assets;

**c.**     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien against the Reorganized Debtor, its estate, or its property, including the Plan Assets or Trust Assets;

**d.**     asserting any right of subrogation, or recoupment of any kind, directly or indirectly against any obligation due the Reorganized Debtor, its estate, or its property, including the Plan Assets or Trust Assets; and

**e.**     proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

### 1.     Setoff and Other Rights

In the event that the Debtor has a claim of any nature whatsoever against the holder of a Claim, the Reorganized Debtor may, but is not required to, setoff against the Claim (and any payments or other distributions to be made in respect of such Claim hereunder), subject to the provisions of § 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any claim that the Debtor has against the holder of a Claim.   No holder of a Claim may, on account of a pre-Effective Date Claim against the Debtor, setoff, offset, suspend, freeze, or recoup any amount from funds or other payments that such claimant may owe to the Debtor or its bankruptcy estate as vested in the Reorganized Debtor. The Confirmation Order shall include an injunction prohibiting any such setoff, offset, suspense, freeze, or recoupment.

### 2.     Injunctions

The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein. Without limiting the

generality of the foregoing, such injunction shall include an absolute prohibition from collecting Claims in any manner other than as provided for in the Plan.

### 3.    Lawsuits

On the Effective Date, all lawsuits, litigation, administrative actions, or other proceedings, judicial or administrative, in connection with the assertion of a Claim against the Debtor and the General Partner of the Debtor, shall be dismissed as to the Debtor, the Reorganized Debtor and the General Partner of the Debtor, except proof of claims and/or objections thereto pending in the Bankruptcy Court.   Such dismissal shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. All lawsuits, litigation, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a claim(s) by the Debtor or any entity proceeding in the name of or for the benefit of the Debtor against a person shall remain in place only with respect to the claim(s) asserted by the Debtor or such other entity, and shall become property of the Reorganized Debtor to prosecute, settle or dismiss as the Reorganized Debtor sees fit.

### 4.    Insurance

Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor or any of the Debtor's Representatives is or was the insured party; the Reorganized Debtor shall become the insured party under any such policies without the need of further documentation other than the Plan and entry of the Confirmation Order.   Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan.

### 5.    De Minimis Distributions

No distribution of less than $25.00 shall be required to be made to any holder of an Allowed Claim. Such undistributed amount may be retained by the Reorganized Debtor.

### 6.    Payment of Statutory Fees

All fees payable pursuant to § 1930 of title 28 of the United States Code shall be paid through the entry of a final decree in the Chapter 11 case.

### 7.    Bankruptcy Restrictions

From and after the Effective Date, the Debtor and the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code or

Rules (e.g., §364, rule 9019), the Bankruptcy Court, or the United States Trustee's guidelines, except that the Reorganized Debtor shall present all post confirmation sales of Hill Fee Lands, if any, by motion with notice to all equity interest owners of the Debtor, to the Court for approval. The Reorganized Debtor may, on behalf of the Reorganized Debtor, compromise claims and controversies post-Effective Date without the need of notice or Bankruptcy Court approval. The Reorganized Debtor may operate the Reorganized Debtor's business in such manner as is consistent with companies not in bankruptcy without the need of seeking Bankruptcy Court approval with regard to any aspect of the Reorganized Debtor's business.   No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

### 8.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the holders of Claims, the holders of Equity Interests, and the Reorganized Debtor, and all of its respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (a) to constitute a waiver or release of any Claims by the Proponent or any other person, (b) to prejudice in any manner the rights of the Proponent or any other person or (c) to constitute any admission by the Purchaser or any other person.

### 9.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or the law of the jurisdiction of organization of any entity, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Chapter 11 case, including the documents executed pursuant to the Plan.

### 10.    Modification of Plan

The Debtor may propose modifications of the Plan in writing at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code and (b) the Proponent shall have complied with §1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Proponent, provided that (i) the Plan, as modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, (ii) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under §1129 of the Bankruptcy Code and (iii) the circumstances warrant such modifications. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its

previous acceptance or rejection.

### 11.    Creditor Defaults

And act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Rule 70 of the Federal Rules of Civil Procedure, (b) may enforce the Plan by order of specific performance, (c) may award judgment against such defaulting creditor in favor of the Reorganized Debtor in an amount, including interest, to compensate the Reorganized Debtor for the damages caused by such default; and (d) make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

### 12.    Severability

Should the Bankruptcy Court determine that any provision of the plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Proponent may modify the Plan in accordance with § 14.12 of the Plan so that such provision shall not be applicable to the holder of any Claim or Equity Interest. Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan, or (b) require the re-solicitation of any acceptance or rejection of the Plan.

### 13.    Closing the Case

Upon the Plan being substantially consummated and, upon motion by the Reorganized Debtor, a final decree entered containing such provisions as may be equitable. The Court may close the case, but retain jurisdiction to hear and decide: any and all pending adversary proceedings, applications and contested matters, including any remands of appeals; any and all pending objections to Claims or the allowance, including with respect to the classification, priority, estimation or payment of any Claim; any and all pending Fee Applications.

### 14.    Notices

All notices, requests, and demands to or upon the Debtor or the Reorganized Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Debtor**                   Carl M. Barto
                                    Law Office of Carl M. Barto
                                    817 Guadalupe Street
                                    Laredo, TX 78040
                                    (956) 725-7500 (telephone)
                                    (956) 722-6739 (facsimile)

                          and

                                    Leslie M. Luttrell
                                    Luttrell + Villarreal Law Group
                                    400 N. Loop 1604E, Ste. 208
                                    San Antonio, Texas 78232
                                    State Bar No. 12708650
                                    S.D.TX Bar No. 24152
                                    Tel. 210.426.3600
                                    Fax. 210.426.3610


Dated: December 8, 2014.

                          Respectfully Submitted,

                          G.B.G. Ranch, Ltd.
                          Acting by its General Partner
                          Guillermo Benavides Garza Investment Company

                          By: */s/Manuel A. Benavides*
                                    Manuel A. Benavides
                          Its:      President


By: */s/Carl M. Barto*                  */s/ Leslie M. Luttrell*
Carl M. Barto                           Leslie M. Luttrell
Law Office of Carl M. Barto             Luttrell + Villarreal Law Group
817 Guadalupe                           400 N. Loop 1604E, Ste. 208
Laredo, TX 78040                        San Antonio, Texas 78232
State Bar No. 01852100                  State Bar No. 12708650
SDTX No. 6830                           S.D.TX Bar No. 24152
(956) 725-7500                          Tel. 210.426.3600
(956) 722-6739 (fax)                    Fax. 210.426.3610
cmblaw@netscorp.net                     luttrell@LVLawGroup.net

**COUNSEL FOR THE DEBTOR**              **SPECIAL COUNSEL FOR DEBTOR**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2014 a true and correct copy of the foregoing has been served pursuant to the ECMF filing and notice procedures or in the manner indicated to the following parties:

Anam Management, L.C.
318 Bordeaux
Laredo, Texas 78041

Dan Hanke
2161 NW Military HWY, Ste 103
San Antonio, Texas 78213

Anam, LTD
318 Bordeaux
Laredo, Texas 78040

Dan King
Bordas Wind Energy
3650 Locklane
Houston, Texas 77027

Benavides Family Minerals, LTD
1019 Chihuahua
Laredo, Texas 78040

Diane W. Sanders
Linebarger Goggan Blair & Sampson,
LLP P.O. Box 17428
Austin, TX 78760-7777

Carl J. Kolb PC
926 Chulie
San Antonio, Texas 78216

GBG Cattle & Hunting Co. LLC
1019 Chihuahua
Laredo, Texas 78040

City of Laredo
c/o Flores & Saucedo, PLLC
5517 McPherson Rd. Ste. 14
Laredo, TX 78041

Golden West Oil
PO Box 6127
Austin TX 78762

Cliff Davis
PO Box 439
Carizzo Spring, Texas 78834

GBGIC
1019 Chihuahua
Laredo, Texas 78040

Guillermo R. Benavides
3007 Chaucer
Laredo, TX 78043

Guillermo Benavides Z.
318 Bordeaux
Laredo, Texas 78045

Raul Vasquez
7718 McPherson Ste. f-105
Laredo, Texas 78045

Rafael Morales
1301 Chacon
Laredo, Texas 78041

Huisache Cattle Co. LTD.
HCR 1 Box 5
Aguilares, Texas 78369

Robert C. Cadena d/b/a 3C Cattle Co.
800 E. Mann Rd. Ste. 103
Laredo, TX 78041

Torrecillos Wind Energy, LLC
3000 El Camino Real
S. Palo Alto Square, Suite 700
Palo Alto CA 94306-2122
United I S D
c/o Guillermo Alarcon
1302 Washington St. Laredo, TX 78040

Quita Wind Energy Company LLC
c/o James A. Hoffman
Clemens & Spencer
112 E. Pecan St., Suite 1300
San Antonio, Texas 78205

Residuary Trust under the Will of
Guillermo Benavides Garza
1019 Chihuahua
Laredo, Texas 78040

Kandy Walker
5210 San Bernardo Ste. 101
Laredo, Texas 78041

Marcel Frey
3200 Southwest Freeway Ste. 1900
Houston, Texas 77027

WEBB CISD C/O
Linebarger Goggan Blair & Sampson, LLP
P.O. Box 17428
Austin, TX 78760-7428

Webb County
c/o Castillo, Montemayor & Solis, PC
7718 McPherson Rd. Ste. #F105
Laredo, TX 78045

## **Parties in Interest and Counsel Filing Appearances**

James Hoffman
Clemens & Spencer
112 E. Pecan St., Suite 1300
San Antonio, Texas 78205

Kenneth A. Valls
Stephen Dittlinger
Trevino, Valls & Haynes, LLP
6909 Springfield Ave. Ste. 200
Laredo, Texas 78041

Jason Davis
Santos Vargas
The Law Offices of Davis & Santos
The Weston Centre
112 E. Pecan St. Ste. 900
San Antonio, Texas 78205

Barbara C. Jue
Office of the U.S. Trustee
606 N Carancahua, Ste. 1107
Corpus Christi, Texas 78401

Ronald Hornberger
Plunkett & Griesenbeck, Inc
Ste 900, 1635 N. E. Loop 410
San Antonio, Tx 78209

Hugo Flores
Rancho Loma Linda
PO Box 450047
Laredo, Texas 78045

Baldemar Garcia Jr., Esq.
602 East Calton Road, 2nd Floor
Laredo, Texas 78041

Patricia Tomasco
Jackson Walker, LLP
100 Congress Ave.
Austin, Texas 78701

/s/ Leslie M. Luttrell
Leslie M. Luttrell

# EXHIBIT A



SURVEY MAP
FOR
PARTITION OF "THE HILL RANCH"

# EXHIBIT B



# Corazon Ranch

**Legend**

Corazon_Ranch
Mineral Classified
Abstracts

**HOWLAND**
ENGINEERING AND SURVEYING CO.
TBPE Firm Registration No. F-4097 / TBPLS Firm Registration No. 100464-00
7615 N. Bartlett Avenue / P.O.Box 451128 (78045) / Laredo, TX. 78041
P. 956.722.4411 / F. 956.722.5414
www.howlandcompanies.com

# EXHIBIT C



# EXHIBIT D

# GBG RANCH TRUST

# TO BE COMPLETED